[No. F013486. Fifth Dist. Jan. 4, 1993.*]

AMARA HESS MIRANDA et al., Plaintiffs and Appellants, v.
SHELL OIL COMPANY et al., Defendants and Appellants.

**[Opinion certified for partial publication.†]**

*Review granted March 18, 1993. Review dismissed and opinion ordered published December 27, 1993.

†Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II-B, II-C, III, IV, V and VI.

1652

**COUNSEL**

Miller & Rolfe, Duane C. Miller, Andreas C. Nelson and John Briggs for Plaintiffs and Appellants.

Sedgwick, Detert, Moran & Arnold, Stephen W. Jones, Frederick D. Baker, Hardin, Cook, Loper, Engel & Bergez, Gennaro A. Filice III, Catherine

Douat-Murray, Armour, Goodin Schlotz & MacBride, Donald E. Schlotz, Claire D. De Chazal, Landels, Ripley & Diamond, Stephen C. Lewis and Cydney T. Batchelor for Defendants and Appellants.

## OPINION

**DIBIASO, J.**—Plaintiffs ask this court to reverse the entry of a summary judgment in their "toxic-tort" action.

We will reverse the summary judgment. In the published portion, we hold that the cost of future medical monitoring, to detect the onset of disease caused by exposure to pollutants, is a "detriment" under Civil Code section 3333.

### STATEMENT OF CASE AND FACTS

Defendants manufactured and sold the pesticide 1, 2 - Dibromo - 3 - Chloropropane (DBCP). The plaintiffs named in the third amended complaint numbered well in excess of 100, and were alleged to be students or adults who drank water contaminated with DBCP at a public school in Kern County between 1965 and mid-1984. Until DBCP was banned in the late 1970's, farmers used the chemical in the manner it was intended to be used, i.e., by applying it in the soil and on various crops. The pesticide so used migrated into the groundwater supply of the school in concentrations exceeding state health standards. In addition to "serious personal injuries" alleged to have been suffered by plaintiffs as a result of their ingestion of DBCP, plaintiffs pled claims for past and future medical care, for the increased risk of contracting cancer, and for emotional distress.

The portion of the complaint directed at defendant manufacturers set forth two theories of liability: strict liability and failure to warn. In the strict liability count, plaintiffs alleged DBCP: (1) was defectively formulated and manufactured, and was sold with defective and misleading label instructions; (2) caused long-term, hazardous contamination of water supplies; (3) was a potent carcinogen in animal testing; and, (4) caused chromosome damage and testicular atrophy in humans. In the failure to warn count, plaintiffs alleged defendant manufacturers failed to adequately warn "users and/or Kern County farmers of the substantial dangers created by the application, handling and use of DBCP." Both counts included an assertion these defendants knew or should have known of the substantial dangers posed by the product.

During the course of the lawsuit, defendant Shell filed a motion for summary judgment. Shell argued the undisputed facts established as a matter of law that—

"[P]laintiffs have no current physical injury, cannot recover under California law for an increased risk of cancer, and, under the facts herein, cannot recover for fear of cancer."

In addition, Shell alternatively asked the court to summarily adjudicate that plaintiffs could not recover for any of the three items of damage. The motion did not challenge plaintiffs' right to recover the cost of future medical monitoring. Defendants Occidental Chemical Company, Occidental Chemical Holding Company (Occidental) and Dow Chemical Company joined in Shell's motions.

Plaintiffs filed written opposition to the defense motions.

The trial court granted the motion for summary judgment as to plaintiffs Amara Hess Miranda, Larry Bartlett, and Scott Blankenship, and denied the motion for summary adjudication on the issue of preemption. Plaintiffs Miranda, Bartlett, and Blankenship appeal from the summary judgment against them.

DISCUSSION

I. DUE PROCESS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. MEDICAL MONITORING

A. *Are medical monitoring costs a recoverable item of damages?*

■ Medical monitoring damages consist of the present dollar value of the reasonable costs of future periodic medical examinations and related care; they are intended to facilitate early diagnosis and treatment of disease or illness caused by a plaintiff's exposure to toxic substances as a result of a defendant's culpable conduct. ■ Plaintiffs here contend the evidence and law submitted by defendants in support of their motion for summary judgment failed to address, or negate, defendants' liability for such damages. According to plaintiffs, because this claim was only one of several items of damage pled in the third amended complaint, the trial court erred in granting summary judgment, regardless of the presence or absence of triable issues with respect to the other items of damage asserted by plaintiffs.

Whether California law permits an award of medical monitoring damages in actions such as this has not been decided. However, there is no lack of

*See footnote, *ante*, page 1651.

authority on the subject in other jurisdictions. Some courts have allowed recovery only when the plaintiff has suffered actual physical injury. (See, e.g., *Schweitzer* v. *Consolidated Rail Corp.* (*Conrail*) (3d Cir. 1985) 758 F.2d 936, 942; see also *Villari* v. *Terminix Intern., Inc.* (E.D.Pa. 1987) 663 F.Supp. 727, 735.) Others have approved the claim where the plaintiff has pled or proven some actual physical injury, but these opinions do not appear to *require* a present physical injury as a precondition of recovery. (*Hagerty* v. *L & L Marine Services, Inc.* (5th Cir. 1986) 788 F.2d 315, 319; *Herber* v. *Johns-Manville Corp.* (3d Cir. 1986) 785 F.2d 79, 81 & 83; *Barth* v. *Firestone Tire and Rubber Co.* (N.D.Cal. 1987) 673 F.Supp. 1466, 1478.) Finally, a number of courts have specifically held a plaintiff is entitled to such damages even in the absence of physical injury. (*In re Paoli R.R. Yard PCB Litigation* (3d Cir. 1990) 916 F.2d 829, 852; *Merry* v. *Westinghouse Elect. Corp.* (M.D. Pa. 1988) 684 F.Supp. 847, 849; *Ayers* v. *Jackson Tp.* (1987) 106 N.J. 557 [525 A.2d 287, 308, 76 A.L.R.4th 571]; *Burns* v. *Jaquays Min. Corp.* (1987) 156 Ariz. 375 [752 P.2d 28, 33]; *Askey* v. *Occidental Chemical Corp.* (1984) 102 A.D.2d [477 N.Y.S.2d 242, 247].)

We believe California law compels us to align with these latter cases. Civil Code section 3333 sets forth the measure of damages applicable to tortious conduct:

"For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

The cost of anticipated medical care reasonably certain to be required in the future has long been held to be a proper item of recoverable damages under this section. (*Buswell* v. *City and County of San Francisco* (1948) 89 Cal.App.2d 123, 133 [200 P.2d 115].) In our view, expenditures for prospective medical testing and evaluation, which would be unnecessary if the particular plaintiff had not been wrongfully exposed to pollutants, are a correlative detriment within Civil Code section 3333. (See *Paoli, supra*, 916 F.2d at p. 852; and *Coover* v. *Painless Parker, Dentist* (1930) 105 Cal.App. 110, 115 [286 P. 1048].) Thus, such a plaintiff may collect damages from the tortfeasor measured by the "reasonable medical and other expenses" to be incurred for monitoring. (Rest. 2d Torts, § 924; see *Hagerty, supra*, 788 F.2d at p. 319; *Ayers, supra*, 525 A.2d at p. 310; *Askey, supra*, 477 N.Y.S.2d at p. 247; see also *Friends For All Children* v. *Lockheed Aircraft Co.* (D.C.Cir. 1984) 746 F.2d 816, 825 [241 App.D.C. 83, 46 A.L.R.4th 1113]; and 4 Harper et al., Law of Torts (2d ed. 1986) § 25.9, pp. 557-558 & fn. 2.)

We have found no authority which limits the applicability of Civil Code section 3333 to those situations where physical injury is evident. Civil Code

section 3282 defines "detriment" as "a loss or harm suffered in person or property." "Harm," under the Restatement Second of Torts means "the existence of loss or detriment in fact *of any kind* to a person . . . ." (Rest.2d Torts, § 7, subd. (2), italics added.) The Restatement distinguishes "physical harm" by classifying it as "the physical impairment of the human body, or of land or chattels." (*Op. cit. supra*, § 7, subds. (2) and (3).) According to the Restatement's analysis, a plaintiff is entitled to recover damages from the tortfeasor for all "harm"—as opposed to "physical harm"—"past, present and prospective, legally caused by the tort." (*Op. cit. supra*, § 910; see also *id.*, § 7, com. d., & § 917.)

A plaintiff who is involved in an automobile accident and suffers no observable physical injury but nevertheless undergoes medically necessary diagnostic tests to determine whether internal injuries exist is no doubt entitled to recover the costs of the examination. If accepted medical practice also deemed it necessary to perform such tests in the future, in order to detect the onset of any subsequently developing injury caused by the accident, the costs of the continued testing would be recoverable under Civil Code section 3333. The outcome should be the same when the operative incident is toxic exposure rather than collision and the potential future harm is disease rather than physical impairment. (Cf. *Friends For All Children* v. *Lockheed Aircraft Co., supra*, 746 F.2d at p. 825.)

We do not mean to say a toxic-tort plaintiff is entitled to collect medical monitoring costs simply by proving the fact of exposure. Even though a right to damages for future consequences exists, recovery is denied for possible, but conjectural, detriment. A jury may not make an award for repercussions that are only "likely" to take place. (*Cordiner* v. *Los Angeles Traction Co.* (1907) 5 Cal.App. 400, 404-405 [91 P. 436].) Instead, the plaintiff's evidence must show the likelihood amounts to such a degree of probability that it is reasonably certain the aftereffect will come about. (Civ. Code, § 3283; *Bellman* v. *San Francisco H. S. Dist.* (1938) 11 Cal.2d 576, 588 [81 P.2d 894].) Thus, the toxic-tort plaintiff who seeks money damages for future medical surveillance is required to establish that the need for monitoring is a reasonably certain consequence of the exposure. (*Ayers, supra*, 525 A.2d at p. 312.) At least five factors appear to bear on this issue:

(1) the significance and extent of the plaintiff's exposure to the chemicals;

(2) the relative toxicity of the chemicals;

(3) the seriousness of the diseases for which plaintiff is at an increased risk;

(4)   the relative increase in the plaintiff's chances of developing a disease as a result of the exposure, when compared to (a) plaintiff's chances of developing the disease had he or she not been exposed, and (b) the chances of members of the public at large developing the disease; and

(5)   the clinical value of early detection and diagnosis. (*Ibid.*)

However, the plaintiff should not be required to prove, in order to recover monitoring costs, that it is reasonably certain he or she will actually contract a particular disease or suffer some definite future affliction.   ■   A medical monitoring claim is not equivalent to a claim for the increased risk of future harm, such as the development of a disease. An increased risk claim seeks present compensation for a possible injury to the plaintiff's general well-being, even though there is no evidence of present harm. (*Ayers, supra,* 525 A.2d at p. 304; *Mauro* v. *Raymark Industries, Inc.* (1989) 116 N.J. 126 [561 A.2d 257, 262].) By contrast, medical monitoring damages reimburse the specific cost of periodic medical testing which is proved by a reasonable medical certainty to be necessary.

It is common knowledge early diagnosis of many serious conditions promotes enhanced cure and survival rates. Science may well counsel medical intervention with respect to a known health risk long before it reaches the point where the law would regard its occurrence as "reasonably certain." (See *Merry* v. *Westinghouse Elect. Corp., supra,* 684 F.Supp. at p. 851.) Thus, the plaintiff's relative increased risk of future disease is an important factor in assessing the reasonable certainty of the need for medical monitoring, but it is not the sole determining factor. Medical monitoring damages compensate the plaintiff for the reasonable certainty he or she will be required to pay for prospective testing and evaluation. As such they constitute "actual loss," an essential element of a cause of action in tort. (See Prosser & Keeton, Torts (5th ed. 1984) § 30, p. 165.)

■   By sanctioning the recovery of medical monitoring costs we are not creating a "new cause of action." We simply recognize such expenditures are a legitimate element of consequential damages which flow from a tortious act and must be established by adequate proof. (*Askey, supra,* 477 N.Y.S.2d at p. 247; but see *Paoli, supra,* 916 F.2d at pp. 849, 850.)   ■   California defines a "cause of action" in accord with Pomeroy's "primary right" theory. (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 23, pp. 66-67.) A cause of action consists of (1) a *primary right* possessed by the plaintiff and a corresponding *primary duty* imposed upon the defendant, and (2) a *delict* or *wrong* committed by the defendant which constitutes a breach of such primary right and duty. (*Ibid.*) Here, each plaintiff's primary right is his or

her interest in avoiding harm as a result of exposure to pollutants. (See Rest.2d Torts, § 1, "interest.") Defendants' corresponding duty is the obligation not to subject plaintiffs to harm by exposing them to toxic chemicals. Each plaintiff's undoubted desire to avoid the pain of physical injury as a result of toxic exposure, the obligation to expend funds in the present to treat physical injury caused by the exposure, and the obligation to expend funds in the future for health monitoring purposes made necessary by the exposure, are different manifestations of the harm brought about by the exposure. They are not separate "primary rights," each of which produces a separate cause of action. (See Rest.2d Torts, § 924.)

To return to the example of the automobile collision, the plaintiff's desire to avoid pain from physical injury, present medical expenditures, and future medical expenditures does not give rise to three distinct causes of action. The plaintiff has but one cause of action for all the detriment he or she suffered as a result of the tort. (*Panos* v. *Great Western Packing Co.* (1943) 21 Cal.2d 636, 638 [134 P.2d 242].)

We neither overlook nor underestimate the dilemma posed to a toxic-tort plaintiff by the single cause of action principle. (See *Haggerty, supra,* 788 F.2d at pp. 320-321.) The time between exposure to toxins and the onset of disease may, and likely will, be long. The plaintiff who secures an award for immediate physical injury, monitoring costs, or some other proper item of damage, might be foreclosed from recovering damages in a second suit filed when the disease actually develops, years, perhaps decades, after the exposure, on the ground a cause of action cannot be "split." (See *Wulfjen* v. *Dolton* (1944) 24 Cal.2d 891, 894 [151 P.2d 846].) The problem is magnified if the plaintiff is unable to recover, in the first action, damages for the increased risk of disease. In addition, statute of limitations rules may prevent the plaintiff from waiting until the disease develops before bringing an action. (Compare *DeRose* v. *Carswell* (1987) 196 Cal.App.3d 1011, 1021-1026 [242 Cal.Rptr. 368] with *Martinez-Ferrer* v. *Richardson-Merrell, Inc.* (1980) 105 Cal.App.3d 316, 320-328 [164 Cal.Rptr. 591].)

Nevertheless, we decide none of these issues because they are not before us. Although judicial solution may be possible (see, e.g., *Mauro, supra,* 561 A.2d at p. 267, and *Ayers, supra,* 525 A.2d at pp. 302-303), we encourage the Legislature to look into the matter.

Defendants worry that allowing claims for medical monitoring will open the "floodgates" of litigation. As they see it, the general public is regularly exposed to all sorts of unhealthy contaminants in the environment; thus, recognition of medical monitoring costs as a proper item of damages will

foment a multitude of lawsuits against an "enormous" range of potential defendants. We do not share defendants' concern. This decision does not sweep away the burdens imposed on a plaintiff to prove each of the elements of his or her cause of action or to prove that medical monitoring is reasonably certain to be required. ▮▮▮ A toxic-tort plaintiff may not recover for preventative medical care and checkups to which members of the public at large should prudently submit. He or she may recover only if the evidence establishes the necessity, as a direct consequence of the exposure in issue, for specific monitoring beyond that which an individual should pursue as a matter of general good sense and foresight.

By allowing the recovery of monitoring costs in a proper case, we satisfy a number of sound policy concerns: (1) public health interest in encouraging and fostering access to early medical testing for those exposed to hazardous substances (*Ayers, supra*, 525 A.2d at p. 311); (2) possible economic savings realized by the early detection and treatment of disease (*Paoli, supra*, 916 F.2d at p. 852); (3) deterrence of polluters (*Ayers, supra*, at pp. 311-312); and (4) elemental justice (*Ayers, supra*, at p. 312).

▮▮▮ In sum, a plaintiff's demonstrated need to undergo future medical monitoring as a result of exposure to toxins constitutes a detriment within the meaning of Civil Code section 3333, the proof of which is neither speculative nor impossible. When the plaintiff proves the exposure was legally caused by the defendant's tortious conduct, the tortfeasor must make the plaintiff whole by paying for the examinations.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . .

III.-VI.*

. . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with instructions to enter orders granting summary adjudication of the following issues in favor of defendants Shell, Occidental, and Dow, and against plaintiffs Bartlett, Blankenship, and Miranda only:

(1) said plaintiffs' right to recover damages for emotional distress (fear of cancer);

*See footnote, *ante*, page 1651.

(2) said plaintiffs' right to recover damages for increased risk of cancer; and

(3) said plaintiffs' right to recover damages for physical injury.

Each party shall bear its own costs on appeal.

Stone (W. A.), Acting P. J., and Buckley, J., concurred.