522 S.E.2d 424

**Wanda Sue BOWER, Patricia E. Hawkins, Bobbie Jo Hardesty, Tom Jay Hardesty, Kent Norman Huffman, and Brenda Kay Spencer, Plaintiffs,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, a Pennsylvania corporation, and North American Philips Corporation, a Delaware corporation, Defendants.**

No. 25338.

Supreme Court of Appeals of
West Virginia.

Submitted March 23, 1999.

Decided July 19, 1999.

Dissenting Opinion of Justice
Maynard Sept. 20, 1999.

Thomas R. Michael, Esq., Michael & Kupec, Clarksburg, West Virginia, Attorney for Plaintiffs.

David K. Hendrickson, Esq., Hendrickson & Long, P.L.L.C., Charleston, West Virginia, Attorney for CBS Corporation, successor to Defendant Westinghouse Elec. Corp.

Dennis C. Sauter, Esq., Mychal S. Schulz, Esq., Jackson & Kelly, Charleston, West Virginia, Attorneys for Defendant North American Philips Corp.

T. Randolph Cox, Jr., Esq., Robert A. Lockhart, Esq., Jamie S. Alley, Esq., Spilman Thomas & Battle, PLLC, Charleston, West Virginia, Attorneys for American Insurance Association, Amicus Curiae.

Michael Florio, Esq., Ancil G. Ramey, Esq., Clarksburg, West Virginia, Attorneys for Chemical Manufacturers Association, Amicus Curiae.

R. Dean Hartley, Esq., James M. O'Brien, Esq., Wheeling, West Virginia, Attorney for West Virginia Trial Lawyers Association, Amicus Curiae.

Jeffrey M. Wakefield, Esq., Erica M. Baumgras, Esq., Michelle Marinacci, Esq., Flaherty, Sensabaugh & Bonasso, Charleston, West Virginia, Attorney for Defense Trial Counsel of West Virginia, Amicus Curiae.

McGRAW, Justice:

This case comes to the Court on certified question from the United States District Court for the Northern District of West Virginia, and asks us to resolve the question of whether this jurisdiction recognizes a common-law cause of action for recovery of anticipated medical monitoring costs in circumstances where the plaintiffs have been tortiously exposed to toxic substances, but do not presently exhibit symptoms of any resulting disease. We conclude that West Virginia law supports such a claim for relief.

## I.

## BACKGROUND

Plaintiffs originally brought this action in the Circuit Court of Marion County, West Virginia, on September 15, 1997. In their complaint, they allege that they were exposed to toxic substances as a result of defendants maintaining a cullet pile containing debris from the manufacture of light bulbs.

The pile covers approximately two acres and is 42 feet deep at certain points. It is uncontested that tests performed in 1994 identified the presence of 30 potentially deleterious substances.[1] None of the plaintiffs presently exhibit symptoms of any disease related to the alleged exposure.

Plaintiffs have asserted the following causes of action against defendants: (1) negligent maintenance and operation of the refuse pile; (2) nuisance; (3) trespass; (4) negligent infliction of emotional distress; and (5) intentional disregard for the health and safety of plaintiffs. As relief, the complaint seeks, *inter alia*, consequential damages in the form of medical monitoring costs.

Defendant North American Philips Corporation ("Philips") removed the case to the District Court pursuant to 28 U.S.C § 1332 (1994 & Supp.1996) (diversity of citizenship). Philips and its codefendant, CBS Corporation (formerly Westinghouse Electric Corporation) ("CBS"), subsequently moved to dismiss plaintiffs' claim for medical monitoring under Fed.R.Civ.P. 12(b)(6) or, in the alternative, Fed.R.Civ.P. 56. In support of their motion, defendants cited *Ball v. Joy Mfg. Co.*, 755 F.Supp. 1344, 1370–72 (S.D.W.Va.1990), *aff'd sub nom. Ball v. Joy Tech., Inc.*, 958 F.2d 36, 39 (4th Cir.1991), *cert. denied*, 502 U.S. 1033, 112 S.Ct. 876, 116 L.Ed.2d 780 (1992),[2] and asserted that "West Virginia law does not recognize an independent cause of action for medical monitoring." Plaintiffs responded by arguing that *Ball* no longer accurately reflects West Virginia law, an assertion they supported by citing to this Court's recent holding in *Marlin v. Bill Rich Constr., Inc.*, 198 W.Va. 635, 482 S.E.2d 620 (1996), where we concluded that a plaintiff is not required to prove a present physical injury in the context of asserting a claim for negligent infliction of emotional distress. Alternatively, plaintiffs sought to certify to this Court the question of whether medical monitoring damages are a proper form of relief under

---

1. These substances include: 4, 4–DDD; aluminum; antimony; arsenic; barium; benzo(a)pyrene; benzo(b)fluoranthene; beryllium; cadmium; carbon disulfide; chromium; cobalt; copper; dibenzo(9,h)anthracene; ethbenzene; ideno(1,2,3–cd)pyrene; iron; lead; m & p-xylenes; magnesium; manganese; mercury; methyl-t-butyl ether (MTBE); nickel; o-xylene; PCB compounds; touene; trichlorofluoramethane; vanadium; and zinc.

2. Federal courts interpreting West Virginia law have previously held that there is no basis for a claim of medical monitoring absent an accompanying physical injury. In *Ball*, the United States District Court for the Southern District of West Virginia ruled that the plaintiffs in that case could not pursue a medical monitoring claim because they had not otherwise proven an "actionable injury" under state law. The court framed its analysis by stating that "the law of West Virginia allows a plaintiff to recover the cost of reasonable and necessary future medical and hospital services where the evidence establishes that such future expenses are reasonably certain to be incurred as a result of an injury of the plaintiff which was proximately caused by the defendant's actions." 755 F.Supp. at 1371 (citing, *inter alia, Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974)). While the *Ball* court engaged in substantial discussion of the policy ramifications of recognizing a claim for medical monitoring, it did not elaborate as to the basis for its conclusion regarding the absence of a cognizable injury. It presumably relied upon its earlier finding that plaintiffs had failed to sustain their claim of emotional injury resulting from alleged exposure to toxic chemicals. *Id.* at 1364–69.

In affirming *Ball*, the Fourth Circuit Court of Appeals went further and, in effect, construed our holding in *Jordan* to require proof of physical injury as a condition precedent to recovery of future medical expenses:

> A claim for medical surveillance costs is simply a claim for future damages. Plaintiff correctly points out that the law of West Virginia allows the recovery of the reasonable value of future medical expenses necessitated by the defendant's wrong. *See, e.g., Jordan v. Bero*, 158 W.Va. 28, [56–58,] 210 S.E.2d 618, 637 (1974). However, such relief is only available where a plaintiff has sustained a physical injury that was proximately caused by the defendant. *Jordan*, 210 S.E.2d at 637; *Long v. City of Weirton*, 158 W.Va. 741, [786,] 214 S.E.2d 832, 860 (1975);.... Plaintiffs have not demonstrated that they are suffering from a present, physical injury that would entitle them to recover medical surveillance costs under West Virginia ... law.

*Ball v. Joy Tech., Inc.*, 958 F.2d at 39. Federal courts continue to apply *Ball* to reject medical monitoring claims arising under West Virginia law. *E.g., McClenathan v. Rhone–Poulenc, Inc.*, 926 F.Supp. 1272, 1281 (S.D.W.Va.1996) (ruling that "there is no basis in West Virginia law for a separate cause of action for medical monitoring") (citing *Ball v. Joy Tech., Inc.*, 958 F.2d at 39).

As will be explained anon, the *Ball* decisions do not accurately reflect West Virginia law.

West Virginia law. The District Court granted the latter motion, and we subsequently agreed to accept the certified question.

## II.

### REFORMULATION OF CERTIFIED QUESTION

The District Court has requested that we define West Virginia law with respect to the following question:

> In a case of negligent infliction of emotional distress absent physical injury, may a party assert a claim for expenses related to future medical monitoring necessitated solely by fear of contracting a disease from exposure to toxic chemicals?

Taken literally, this question asks whether a plaintiff who suffers emotional distress without physical injury can obtain consequential damages in the form of future costs associated with diagnosing maladies precipitated "solely by the fear of contracting a disease." We do not think that the District Court intended to pose such a narrow question. Rather, as stated elsewhere in the certification order, the court is clearly asking the broader question of "whether West Virginia law permits an independent cause of action to recover future medical monitoring costs absent physical injury." [3]

■ West Virginia's Uniform Certification of Questions of Law Act, W. Va.Code §§ 51–1A–1 to –13, expressly permits this Court to reformulate questions submitted by a certifying court. W. Va.Code § 51–1A–4 (1996); see syl. pt. 3, in part, Kincaid v. Mangum, 189 W.Va. 404, 432 S.E.2d 74 (1993) ("When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under .'. the Uniform Certification of Law Act found in W. Va.Code, 51–1A–1, et seq. ...."). The comment to the Uniform Act describes the parameters of this authority:

> Requiring a question to be answered precisely as it is certified imposes a counterproductive rigidity that could decrease the utility of the answer received. Permitting the receiving court to amend the certified question freely may also adversely affect the utility of the answer and result in the issuance of an advisory opinion. The term "reformulate" is intended to connote a retention of the specific terms and concepts of the question while allowing some flexibility in restating the question in light of the justiciable controversy pending before the certifying court.

Unif. Certified Questions of Law Act § 4 cmt., 12 U.L.A. 74 (1996).

The pleadings in this case indicate that plaintiffs are seeking, inter alia, compensation for the cost of future medical testing aimed at diagnosing potential ailments caused by the alleged toxic exposure. While plaintiffs have couched their argument in favor of recognizing such a claim in terms of recent refinements in our law governing causes of action for negligent infliction of emotional distress, it is clear that the question posed by the District Court is aimed at revisiting the issue that first arose in Ball v. Joy Manufacturing—namely, whether West Virginia law recognizes a cause of action for future medical monitoring absent a present physical injury.[4] Consequently, based upon

---

**3.** The District Court states in its certification order that

the question [of] whether West Virginia law permits an independent cause of action to recover future medical monitoring costs absent physical injury is unsettled. Inasmuch as the answer to that question will dispose of an important issue in the case, and possibly lead to an early resolution of the litigation, the Court concludes that certification of the question to the West Virginia Supreme Court of Appeals is appropriate.

We also note that defendants have challenged plaintiffs' claim for medical monitoring under Fed.R.Civ.P. 12(b)(6); obviously, defendants are treating this as a separate claim for relief rather than as a demand for judgment, since only the former is properly challenged under Rule 12(b)(6). See 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1255, at 367–68 (2d ed.1990).

**4.** We note that defendant CBS concedes that the question posed by the District Court should be reformulated along these lines.

our interpretation of the underlying legal controversy, and with due consideration of the language and concepts originally employed by the District Court, we reformulate the question as follows:

Whether, under West Virginia law, a plaintiff who does not allege a present physical injury can assert a claim for the recovery of future medical monitoring costs where such damages are the proximate result of defendant's tortious conduct?

## III.

## STANDARD OF REVIEW

■ In the analogous context of answering certified questions posed by the circuit courts of this state, we have held that the "standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996). Similarly, this Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court. Unlike federal courts interpreting state law, this Court is not necessarily bound by past decisions; instead, we "must of necessity determine the present law bearing on the issue certified." *Morningstar v. Black and Decker Mfg. Co.*, 162 W.Va. 857, 862, 253 S.E.2d 666, 669 (1979).

## IV.

## DISCUSSION

Defendants argue that West Virginia law precludes the award of future medical monitoring expenses absent evidence of a present physical injury. In the alternative, they urge the Court to impose certain requirements on claims for medical monitoring so as to reasonably narrow the universe of potential plaintiffs. We reject the former argument, but take the considered suggestions of the parties into account in formulating a standard governing medical monitoring claims.

### A.

### *Recognizing a Claim for Medical Monitoring*

■ A claim for medical monitoring seeks to recover the anticipated costs of long-term diagnostic testing necessary to detect latent diseases that may develop as a result of tortious exposure to toxic substances. Over the past decade, a growing number of courts have recognized this cause of action as a well-grounded extension of traditional common-law tort principles. Since the landmark decision in *Askey v. Occidental Chemical Corp.*, 102 A.D.2d 130, 477 N.Y.S.2d 242 (1984), appellate courts in at least six other states have permitted claims for medical monitoring.[5] Likewise, a growing number of federal courts sitting in diversity have interpreted state law to permit such claims.[6] What these decisions uniformly acknowledge is that significant economic harm may be inflicted on those exposed to toxic substances, notwithstanding the fact that the physical harm resulting from such exposure is often latent. *See In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 852 (3d Cir.1990) [hereinafter *"Paoli I"*], *cert. denied sub nom. General Elec. Co. v. Knight*, 499 U.S. 961, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991).

As the Fourth Circuit correctly surmised, a claim for medical monitoring is essentially

---

**5.** *See Bourgeois v. A.P. Green Indus., Inc.*, 716 So.2d 355 (La.1998); *Redland Soccer Club, Inc. v. Dep't of the Army*, 548 Pa. 178, 696 A.2d 137, 145 (1997); *Potter v. Firestone Tire and Rubber Co.*, 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795, 822–23 (1993) (in bank); *Hansen v. Mountain Fuel Supply*, 858 P.2d 970, 979–80 (Utah 1993); *Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 752 P.2d 28 (Ariz.Ct.App.1987); *Ayers v. Township of Jackson*, 106 N.J. 557, 525 A.2d 287 (1987); *see also Elam v. Alcolac, Inc.*, 765 S.W.2d 42, 209 (Mo.Ct.App.1988) (dictum).

**6.** *See, e.g., Carey v. Kerr–McGee Chem. Corp.*, 999 F.Supp. 1109 (N.D.Ill.1998) (applying Illinois law); *Burton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515 (D.Kan.1995) (Kansas law); *Day v. NLO*, 851 F.Supp. 869 (S.D.Ohio 1994) (Ohio law); *Bocook v. Ashland Oil, Inc.*, 819 F.Supp. 530 (S.D.W.Va.1993) (Kentucky law); *Cook v. Rockwell Int'l Corp.*, 755 F.Supp. 1468 (D.Colo. 1991) (Colorado law); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829 (3d Cir.1990) (Pennsylvania law); *but see Purjet v. Hess Oil Virgin Islands Corp.*, Civ. No.1985/284, 1986 WL 1200 (D.Virgin Islands Jan. 8, 1986) (refusing to recognize medical monitoring claim under Restatement (Second) and law of Virgin Islands).

"a claim for future damages." *Ball v. Joy Tech., Inc.,* 958 F.2d 36, 39 (4th Cir.1991). Consequently, we resort to elementary principles of tort law to determine whether medical monitoring is a proper subject of compensatory damages.

Since before the turn of the century, this jurisdiction sanctioned the recovery of future medical expenses where a plaintiff could prove with reasonable certainty that such costs would be incurred as a proximate consequence of a defendant's tortious conduct. *See, e.g., Shreve v. Faris,* 144 W.Va. 819, 826, 111 S.E.2d 169, 174 (1959); *Wilson v. Fleming,* 89 W.Va. 553, 559, 109 S.E. 810, 813 (1921); *Carrico v. West Virginia Cent. & P. Ry. Co.,* 39 W.Va. 86, 102–3, 19 S.E. 571, 577 (1894). In syllabus point 15 of *Jordan v. Bero,* 158 W.Va. 28, 210 S.E.2d 618, (1974), we stated that "[t]o warrant recovery for future medical expenses, the proper measure of damages is ... the reasonable value of medical services as will probably be necessarily incurred by reason of the permanent effects of a party's injuries." *See also Reed v. Wimmer,* 195 W.Va. 199, 209–10, 465 S.E.2d 199, 209–10 (1995). Although *Jordan* and cases dealing with similar subject matter sometimes speak in terms of compensating a plaintiff for the anticipated cost of treating a "permanent injury," we have never held that lasting physical harm is an absolute prerequisite for recovery of future medical expenses. Indeed, we have never before dealt with a case such as this where the plaintiff sought future medical expenses with respect to a latent disease.

We now reject the contention that a claim for future medical expenses must rest upon the existence of present physical harm. The "injury" that underlies a claim for medical monitoring—just as with any other cause of action sounding in tort—is "the invasion of any legally protected interest." Restatement (Second) of Torts § 7(1) (1964). As one of the first courts to grapple with this subject observed:

It is difficult to dispute that an individual has an interest in avoiding expensive diagnostic examinations just as he or she has an interest in avoiding physical injury. When a defendant negligently invades this interest, the injury to which is neither speculative nor resistant to proof, it is elementary that the defendant should make the plaintiff whole by paying for the examinations.

*Friends for All Children, Inc. v. Lockheed Aircraft Corp.,* 746 F.2d 816, 826 (D.C.Cir. 1984) (footnote omitted). "Although the physical manifestations of an injury may not appear for years, the reality is that many of those exposed have suffered some legal detriment; the exposure itself and the concomitant need for medical testing constitute the injury." *Hansen v. Mountain Fuel Supply,* 858 P.2d 970, 977 (Utah 1993) (citations omitted). A number of courts have employed similar logic to sustain claims for medical monitoring costs. *See, e.g., Bourgeois v. A.P. Green Indus., Inc.,* 716 So.2d 355, 359 (La. 1998); *Potter v. Firestone Tire and Rubber Co.,* 6 Cal.4th 965, 1005, 25 Cal.Rptr.2d 550, 578, 863 P.2d 795, 822–23 (1993) (in bank); *Cook v. Rockwell Int'l Corp.,* 755 F.Supp. 1468, 1477 (D.Colo.1991); *Ayers v. Township of Jackson,* 106 N.J. 557, 601–2, 525 A.2d 287, 308 (1987).

The court in *Friends for All Children* gave the following often-quoted hypothetical to illustrate the soundness of permitting recovery for necessary diagnostic testing even in the absence of physical injury:

Jones is knocked down by a motorbike which Smith is riding through a red light. Jones lands on his head with some force. Understandably shaken, Jones enters a hospital where doctors recommend that he undergo a battery of tests to determine whether he has suffered any internal head injuries. The tests prove negative, but Jones sues Smith solely for what turns out to be the substantial cost of the diagnostic examinations.

746 F.2d at 825. In such circumstances

it is clear that even in the absence of physical injury Jones ought to be able to recover the cost for the variety of diagnostic examinations proximately caused by Smith's negligent action.... The motorbike rider, though his negligence, caused the plaintiff, in the opinion of medical experts, to need specific medical services—a cost that is neither inconsequential nor of a

kind the community generally accepts as a part of the wear and tear of daily life. Under these principles of tort law, the motorbiker should pay.

*Id.* Thus, it logically follows that a plaintiff asserting a claim for medical monitoring costs is not required to prove present physical harm resulting from tortious exposure to toxic substances.

Nor is the plaintiff required to demonstrate the probable likelihood that a serious disease will result from the exposure. As the Third Circuit indicated in *Paoli I,* "the appropriate inquiry is not whether it is reasonably probable that plaintiffs will suffer [physical] harm in the future, but rather whether medical monitoring is, to a reasonable degree of medical certainty, necessary in order to diagnose properly the warning signs of disease." 916 F.2d at 851. *See also* 2 Dan B. Dobbs, *Law of Remedies* § 8.1(3), at 380 n.30 (2d ed. 1993) ("diagnosis expenses—medical monitoring—may be both reasonable and reasonably certain to occur in the future, even if the disease it is intended to diagnose is not reasonably certain to occur").

The California Supreme Court in *Potter* detailed a number of policy considerations that favor recognizing a right to recover medical monitoring costs:

First, there is an important public health interest in fostering access to medical testing for individuals whose exposure to toxic chemicals creates an enhanced risk of disease, particularly in light of the value of early diagnosis and treatment for many cancer patients. (*Ayers, supra,* [106 N.J. at 604,] 525 A.2d at 311; *Miranda* [*v. Shell Oil Co.,*] 17 Cal.App. 4th [1651,] 1660, 15 Cal.Rptr.2d 569 [republished at 26 Cal. Rptr.2d 655] [ (1993) ].) Second, there is a deterrence value in recognizing medical surveillance claims—"[a]llowing plaintiffs to recover the cost of this care deters irresponsible discharge of toxic chemicals by defendants...." (*In re Paoli, supra,* 916 F.2d at 852; *Miranda, supra,* 17 Cal. App. 4th at 1660, 15 Cal.Rptr.2d 569; *Ayers, supra,* [106 N.J. at 604,] 525 A.2d at 311–312; cf. *Friends for All Children, supra,* 746 F.2d at 825.) Third, "[t]he availability of a substantial remedy before the

consequences of the plaintiffs' exposure are manifest may also have the beneficial effect of preventing or mitigating serious future illnesses and thus reduce the overall costs to the responsible parties." (*Ayers, supra,* [106 N.J. at 604,] 525 A.2d at 312; *Miranda, supra,* 17 Cal.App. 4th at 1660, 15 Cal.Rptr.2d 569.) In this regard, the early detection of cancer may improve the prospects for cure, treatment, prolongation of life and minimization of pain and disability. Finally, societal notions of fairness and elemental justice are better served by allowing recovery of medical monitoring costs. That is, it would be inequitable for an individual wrongfully exposed to dangerous toxins, but unable to prove that cancer or disease is likely, to have to pay the expense of medical monitoring when such intervention is clearly reasonable and necessary. (*Ayers, supra,* [106 N.J. at 604,] 525 A.2d at 312; *Miranda, supra,* 17 Cal.App. 4th at 1660, 15 Cal.Rptr.2d 569.)

*Potter,* 6 Cal.4th at 1008, 25 Cal.Rptr.2d at 579, 863 P.2d at 824. This Court is in agreement with these statements.

We therefore align this jurisdiction with those that have considered the issue, and conclude that a cause of action exists under West Virginia law for the recovery of medical monitoring costs, where it can be proven that such expenses are necessary and reasonably certain to be incurred as a proximate result of a defendant's tortious conduct. The certified question, as reformulated, is therefore answered in the affirmative.

### B.

### *Elements of a Claim for Medical Monitoring*

■ Having determined that a claim for recovery of future medical monitoring costs is cognizable under West Virginia law, we are compelled to define the elements necessary to sustain such a claim.

■ We have consistently held that the "future effect of an injury must be proven with reasonable certainty in order to permit a jury to award an injured party future damages." Syl. pt. 9, in part, *Jordan v. Bero, supra.* This flows from the more gen-

eral rule that " 'proof of damages ... cannot be sustained by mere speculation or conjecture.' " Syl. pt. 5, in part, *Sisler v. Hawkins*, 158 W.Va. 1034, 217 S.E.2d 60 (1975) (quoting syl. pt. 1, *Spencer v. Steinbrecher*, 152 W.Va. 490, 164 S.E.2d 710 (1968)). Thus, as the Court stated in syllabus point 16 of *Jordan*, "[p]roof of future medical expenses is insufficient as a matter of law in the absence of any evidence as to the necessity and cost of such future medical expenses."

The various state and federal courts addressing this issue have moved toward relative consensus on the elements necessary to establish a claim for medical monitoring. The New Jersey Supreme Court was the first to attempt to forge a standard. In *Ayers*, the court stated that

> the cost of medical surveillance is a compensable item of damages where the proofs demonstrate, through reliable expert testimony predicated upon the significance and extent of the exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which individuals are at risk, the relative increase in the chance of onset of disease in those exposed, and the value of early diagnosis, that such surveillance to monitor the effect of exposure to toxic chemicals is reasonable and necessary.

106 N.J. at 606, 525 A.2d at 312. The Third Circuit Court of Appeals followed shortly thereafter with the adoption of a four-element standard in *Paoli I*.[7] This was later modified in light of the Utah Supreme Court's holding in *Hansen*,[8] by adding the requirement that the monitoring regime

must be " 'different than the one that would have been prescribed in the absence of the particular exposure.' " *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 789 (3rd Cir. 1994) [hereinafter "*Paoli II*"] (quoting *Hansen*, 858 P.2d at 980), *cert. denied sub nom. General Elec. Co. v. Ingram*, 513 U.S. 1190, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995); *see also Redland Soccer Club, Inc. v. Dep't of the Army*, 55 F.3d 827, 846 n. 8 (3d Cir.1995), *cert. denied*, 516 U.S. 1071, 116 S.Ct. 772, 133 L.Ed.2d 725 (1996). Subsequent decisions by state courts mirror the standards set forth in *Paoli I* (as modified by *Paoli II* ), and *Hansen. See, e.g., Bourgeois*, 716 So.2d at 360–61; *Redland Soccer Club, Inc. v. Dep't of the Army*, 548 Pa. 178, 195–96, 696 A.2d 137, 145–46 (Pa.1997).

With the significant divergence of eliminating the requirement that diagnostic monitoring must be tied to the existence of a proven treatment protocol, we substantially adopt the *Paoli* test. Thus, in order to sustain a claim for medical monitoring expenses under West Virginia law, the plaintiff must prove that (1) he or she has, relative to the general population, been significantly exposed; (2) to a proven hazardous substance; (3) through the tortious conduct of the defendant; (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease; (5) the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure; and (6) monitoring procedures ex-

---

7. The four-factor test stated in *Paoli I* is as follows:

> 1. Plaintiff was significantly exposed to a proven hazardous substance through the negligent action of the defendant.
> 2. As a proximate result of exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease.
> 3. That increased risk makes periodic diagnostic medical examinations reasonably necessary.
> 4. Monitoring and testing procedures exist which make the early detection and treatment of the disease possible and beneficial.

*Paoli I*, 916 F.2d at 852.

8. The *Hansen* court stated the following:

> To recover medical monitoring damages under Utah law, a plaintiff must prove the following:
> (1) exposure
> (2) to a toxic substance
> (3) which exposure was caused by the defendant's negligence
> (4) resulting in an increased risk
> (5) of a serious disease, illness or injury
> (6) for which a medical test for early detection exists
> (7) and for which early detection is beneficial, meaning that a treatment exists that can alter the course of the illness, and
> (8) and which test has been prescribed by a qualified physician according to contemporary scientific principles.

*Hansen*, 858 P.2d at 979 (footnote omitted).

142

ist that make the early detection of a disease possible. We will briefly discuss these elements in turn.

■ *1. Significant Exposure.* Before liability can attach with respect to the cost of medical monitoring, the plaintiff must first be exposed to a hazardous substance. *Cf. Johnson v. West Virginia Univ. Hosp., Inc.,* 186 W.Va. 648, 652, 413 S.E.2d 889, 893 (1991) ("before a recovery for emotional distress damages may be made due to fear of contracting a disease ... there must first be *exposure* to the disease") (emphasis in original).

■ *2. Proven Hazardous Substance.* The plaintiff must present scientific evidence demonstrating a probable link between exposure to a particular compound and human disease.

■ *3. Tortious Conduct.* Liability for medical monitoring is predicated upon the defendant being legally responsible for exposing the plaintiff to a particular hazardous substance. Legal responsibility is established through application of existing theories of tort liability. "Recognition that a defendant's conduct has created the need for future medical monitoring does not create a new tort. It is simply a compensable item of damage when liability is established under traditional theories of recovery." *Potter,* 6 Cal.4th at 1007, 25 Cal.Rptr.2d at 578, 863 P.2d at 823; *see also Hansen,* 858 P.2d at 979 ("the plaintiff must prove that the exposure to the toxic substance was caused by the defendant's negligence, i.e., by the breach of a duty owed to the plaintiff"). This is not to say that a plaintiff may not, as a matter of pleading, assert a separate cause of action based upon medical monitoring; rather, it means that underlying liability must be established based upon a recognized tort—*e.g.,* negligence, strict liability, trespass, intentional conduct, etc.

■ *4. Increased Risk.* Again, the plaintiff is not required to show that a particular disease is certain or even likely to occur as a result of exposure. *Potter,* 6 Cal.4th at 1008, 25 Cal.Rptr.2d at 579, 863 P.2d at 824. All that must be demonstrated is that the plaintiff has a significantly increased risk of contracting a particular disease relative to what would be the case in the absence of

exposure. Importantly, "[n]o particular level of quantification is necessary to satisfy this requirement." *Hansen,* 858 P.2d at 979; *see also Bourgeois,* 716 So.2d at 360.

■ *5. Necessity of Diagnostic Testing.* Diagnostic testing must be "reasonably necessary" in the sense that it must be something that a qualified physician would prescribe based upon the demonstrated exposure to a particular toxic agent. This Court is not entirely in accord with the statement in *Hansen* to the effect that

> if a reasonable physician would not prescribe ... [medical monitoring] for a particular plaintiff because the benefits of monitoring would be outweighed by the costs, which may include, among other things, the burdensome frequency of the monitoring procedure, its excessive price, or its risk of harm to the patient, then recovery would not be allowed.

858 P.2d at 980; *see also Paoli II,* 35 F.3d at 788. While there obviously must be some reasonable medical basis for undergoing diagnostic monitoring, factors such as financial cost and the frequency of testing need not necessarily be given significant weight. Moreover, the requirement that diagnostic testing must be medically advisable does not necessarily preclude the situation where such a determination is based, at least in part, upon the subjective desires of a plaintiff for information concerning the state of his or her health.

■ *6. Existence of Monitoring Procedures.* Medical monitoring must be available in order to be a necessary, compensable item of damages. "If no such test exists, then periodic monitoring is of no assistance and the cost of such monitoring is not available." *Bourgeois,* 716 So.2d at 361. In the event diagnostic testing later becomes available, then a plaintiff will have the right at such later time to demonstrate the effectiveness of the test, and be compensated for utilizing it, so long as all the other elements of the cause of action are satisfied. *Hansen,* 858 P.2d at 979 n. 12.

■ We agree with the Pennsylvania Supreme Court that a plaintiff should not be required to show that a treatment currently

exists for the disease that is the subject of medical monitoring. *Redland,* 548 Pa. at 196 n. 8, 696 A.2d at 146 n. 8. In this age of rapidly advancing medical science, we are hesitant to impose such a static requirement. In *Bourgeois,* Chief Justice Calogero gave a poignant justification for permitting recovering even in instances where there is no proven treatment:

> One thing that ... a plaintiff might gain [even in the absence of available treatment] is certainty as to his fate, whatever it might be. If a plaintiff has been placed at an increased risk for a latent disease through exposure to a hazardous substance, absent medical monitoring, he must live each day with the uncertainty of whether the disease is present in his body. If, however, he is able to take advantage of medical monitoring and the monitoring detects no evidence of disease, then, at least for the time being, the plaintiff can receive the comfort of peace of mind. Moreover, even if medical monitoring did detect evidence of an irreversible and untreatable disease, the plaintiff might still achieve some peace of mind through this knowledge by getting his financial affairs in order, making lifestyle changes, and, even perhaps, making peace with estranged loved ones or with his religion. Certainly, those options should be available to the innocent plaintiff who finds himself at an increased risk for a serious latent disease through no fault of his own.

716 So.2d at 363 (Calogero, C.J., concurring).

As a final matter, defendant CBS and several *amici curiae* argue that plaintiffs should only be compensated for medical monitoring costs through the establishment of a court-administered fund, to the exclusion of lump-sum damage awards. While there are situations where utilization of such funds may be beneficial, *see Ayers,* 106 N.J. at 608, 525 A.2d at 314 ("the use of a court-supervised fund to administer medical-surveillance payments *in mass exposure cases* ... is a highly appropriate exercise of the Court's equitable powers") (emphasis added), we do not presently see a need to constrain the discretion of the trial courts to fashion appropriate remedies in cases such as these.

## V.

## CONCLUSION

We answer the question posed by the District Court, as reformulated, in the affirmative, and conclude that West Virginia law recognizes a cause of action for future medical monitoring costs where such necessary expenses are incurred as a proximate result of a defendant's tortious acts. Having answered the certified question, this case is dismissed from the docket of this Court.

Certified question answered; case dismissed.

MAYNARD, Justice, dissenting:

(Filed Sept. 20, 1999)

I dissent in this case because I believe that West Virginia law does not permit an independent cause of action to recover future medical monitoring costs absent physical injury, and this Court has no authority to create such a cause of action.

Several things about this decision trouble me. The first is the way in which the majority goes beyond the narrow question presented by the District Court in order to decide this case. I do not dispute the Court's authority under our Uniform Certification of Questions of Law Act to reformulate a question submitted by a certifying court. I do dispute, however, the necessity of doing so in the instant case. The District Court set forth a clear, concise and limited question:

> In a case of negligent infliction of emotional distress absent a physical injury, may a party assert a claim for expenses related to future medical monitoring necessitated solely by fear of contracting a disease from exposure to toxic chemicals.

This question is applicable to the facts of the case before the District Court. It is also pertinent in light of this Court's recent holding in *Marlin v. Bill Rich Const., Inc.,* 198 W.Va. 635, 482 S.E.2d 620 (1996), concerning the availability of recovery for negligent infliction of emotional distress based solely upon the fear of contracting a disease. This modest issue, however, was not suitable for the majority's grand designs. Consequently,

the majority transformed the issue into "whether West Virginia law permits an independent cause of action to recover future medical monitoring costs absent physical injury." The majority's determination to make new law despite the specific issue before it is further illustrated by its summary rejection of settled tort law and the previous decisions of this Court.

The second and obviously most troubling aspect of this decision is the majority's violation of the constitutional separation of powers doctrine by usurping the Legislature's authority to enact laws. Article V, Section 1 of the Constitution of West Virginia provides that "[t]he legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others[.]" According to Article VI, Section 1 of the Constitution, the legislative power is vested in the Senate and House of Delegates. This Court has described the legislative power as "the power of the law-making bodies to frame and enact laws." *State v. Huber,* 129 W.Va. 198, 207, 40 S.E.2d 11, 18 (1946). This is in contrast to the judicial power which is,

> the power which a regularly constituted court exercises in matters which are brought before it, in the manner prescribed by statute, or established rules of practice of courts, and which matters do not come within the powers granted to the executive, or vested in the legislative department of the Government.

*Id.,* 129 W.Va. at 208, 40 S.E.2d at 18. This Court's jurisdiction is prescribed and limited by the constitutional provisions which create it, *see Deitz Colliery Co. v. Ott,* 99 W.Va. 663, 129 S.E. 708 (1925), and nowhere in the Constitution is this Court granted the power to create causes of action. *See* Art. VIII, § 3, *W.Va. Const.* This Court recognized long ago that "[t]he legislature has the right to create new causes of action for the recovery of money." *Norfolk & W. Ry. Co. v. Pinnacle Coal Co.,* 44 W.Va. 574, 577, 30 S.E. 196, 197 (1898). We reiterated more recently that the creation, augmentation, repeal or abolishment of complete causes of action is a legislative power. *See Robinson v. Charleston Area Medical Center, Inc.,* 186 W.Va. 720, 414 S.E.2d 877 (1991). Up until approximately the last twenty-five years, the Court respected that fact. This decision shows just how far this Court has moved from its constitutional underpinnings and its proper role.

Finally, even if this Court did have the power to create causes of action, I would not agree with the one created by this decision. The majority rejects the fundamental 200 year old tort law principle that a plaintiff may not recover damages unless he or she has a present injury, and replaces it with the speculative and amorphous showing of "increased risk." The majority admits that "the plaintiff is not required to show that a particular disease is certain or even likely to occur as a result of exposure" (citation omitted). Because of this decision, plaintiffs will now be compensated when there is no injury, thus providing a windfall for plaintiffs. As one commentator has recently suggested, lawyers can now advertise, "Don't wait until you're hurt, call now."[1] In fact, the practical effect of this decision is to make almost every West Virginian a potential plaintiff in a medical monitoring cause of action. Those who work in heavy industries such as coal, oil, gas, timber, steel, and chemicals as well as those who work in older office buildings, or handle ink in newspaper offices, or launder the linens in hotels have, no doubt, come into contact with hazardous substances. Now all of these people may be able to collect money as victorious plaintiffs without any showing of injury at all.

We recently stated, "[t]he one area, above all, where a court should exercise caution is when it is deciding its own power." *State ex rel. Affiliated Construction Trades Council v. Vieweg,* 205 W.Va. 687, 694, 520 S.E.2d 854, 861 (1999). The majority exercised no caution whatsoever in this case. Consequently, it exceeded its legitimate powers and usurped the function of the Legislature. As a result, its holding here is not only

---

[1]. Victor Schwartz, *Some lawyers ask, why wait for injury? Sue now!,* USA TODAY, July 15, 1999, at 17A.

judge-made law, it is bad law. For these reasons, I respectfully dissent.