600 S.E.2d 188

### In re TOBACCO LITIGATION (Medical Monitoring Cases).

### No. 31157.

Supreme Court of Appeals of West Virginia.

Submitted: Nov. 5, 2003.

Filed: May 6, 2004.

---

Maynard, C.J., filed dissenting opinion.

Scott S. Segal, Esq., Deborah L. McHenry, Esq., The Segal Law Firm, Charleston, for Petitioners.

Dennis C. Sauter, Esq., Gretchen M. Callas, Esq., Jackson & Kelly, Charleston, for R.J. Reynolds Tobacco Co.

W. Henry Jernigan, Esq., Dinsmore & Shohl, Charleston, Mark L. Silbersack, Esq., Dinsmore & Shohl, Cincinnati, OH, Pro Hac Vice for Brown & Williamson Tobacco Corp.

Mark E. Troy, Esq., Bailey & Wyant, Charleston, for Liggitt Group, Inc.

Pamela L. Campbell, Esq., David B. Thomas, Esq., Teresa K. Thompson, Esq., Allen, Guthrie, McHugh & Thomas, Charleston, for Philip Morris, Inc.

William Michael Greunloh, Esq., Frederick C. Baker, Esq., Motley Rice, LLC, Mount Pleasant, SC, Pro Hac Vice for Petitioners.

R. Scott Long, Esq., Hendrickson & Long, Charleston, for Petitioners.

Theodore Goldberg, Esq., David B. Rodes, Esq., Goldberg, Persky, Jennings & White, Pittsburgh, PA, Pro Hac Vice for Petitioners.

Jeffrey L. Furr, Esq., David V. Patton, Esq., Marilyn R. Forbes, Esq., Amy L. Bircher, Esq., Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, Pro Hac Vice for R.J. Reynolds Tobacco Co.

Joseph Patrick Archie, Esq., A. Elizabeth Blackwell, Esq., Andrew R.C. Gaddes, Esq., Sean P. Wajert, Esq., Dechert, Price & Rhodes, Philadelphia, PA, Pro Hac Vice for Philip Morris USA, Inc.

Michael J. Farrell, Esq., Farrell, Farrell & Farrell, LC, Huntington, for Lorillard Tobacco Company.

J. William Newbold, Esq., Bruce Ryder, Esq., Thompson Cobun, LLP, St. Louis, MO, Pro Hac Vice for Lorillard Tobacco Company.

PER CURIAM.

In this appeal, we are asked to review a jury's verdict declining to require the manufacturers of certain tobacco-containing products to provide medical monitoring to individuals who were significantly exposed to the potentially harmful effects of smoking. As set forth below, we affirm a trial court order that upholds the jury's verdict.

I.

This appeal involves a class action by certain West Virginia residents (hereinafter "appellants") against several manufacturers of

tobacco-containing cigarettes (hereinafter "appellees"), alleging that those products were defective. Because of their exposure to tobacco smoke, the appellants sought the creation and funding by the appellees of a medical monitoring program for the early detection of two tobacco-related diseases: lung cancer, and chronic obstructive pulmonary disease ("COPD"). The appellants are residents of West Virginia who had not previously been diagnosed with those two diseases, and who had a minimum of a "five-pack-year history" of smoking.[1]

■■■ The trial court bifurcated the case into several phases,[2] and in the first phase allowed the parties to present evidence on seven issues common to all appellants and appellees. The first six issues corresponded to the six elements of a cause of action for medical monitoring identified by this Court in Syllabus Point 3 of *Bower v. Westinghouse Electric Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999), where we stated:

> In order to sustain a claim for medical monitoring expenses under West Virginia law, the plaintiff must prove that (1) he or she has, relative to the general population, been significantly exposed; (2) to a proven hazardous substance; (3) through the tortious conduct of the defendant; (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease; (5) the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in

the absence of the exposure; and (6) monitoring procedures exist that make the early detection of a disease possible.

Applying *Bower*, the trial court established that the first six issues were:

> (1) whether a five-pack-year smoking history by an appellant constituted *a significant exposure* to a hazardous substance;

> (2) whether smoke from the appellees' tobacco-containing cigarettes constituted, or contained, *a proven hazardous substance;*

> (3) whether the appellees' *conduct* in designing and selling cigarettes *was tortious,* under theories of strict liability, negligence or breach of a voluntary undertaking;

> (4) whether exposure to a minimum of five-pack-years of cigarette smoke results in *an increased risk* of contracting lung cancer and/or COPD;

> (5) whether that increased risk of contracting lung cancer and/or COPD makes it *reasonably necessary* for the appellees to undergo *periodic diagnostic medical examinations* different from what would be prescribed in the absence of smoking; and

> (6) whether *monitoring procedures exist* that make the early detection of lung cancer and/or COPD possible.

The seventh and last issue that the parties were permitted to present evidence upon concerned whether the appellees' conduct in designing and selling cigarettes was willful and wanton, such that *punitive damages* might be awarded.

---

**1.** A "pack-year" refers to smoking the equivalent of one pack of cigarettes per day for one year, regardless of the actual time period during which the smoking occurs. Five pack-years include, *e.g.*, (1) smoking one pack per day for five years, (2) smoking two packs per day for two and one-half years, and (3) smoking half a pack per day for ten years.

Applying this criteria, the parties estimate that the class involves some 270,000 present and former West Virginia smokers.

**2.** This Court has repeatedly stated that while "polyfurcation" of the issues in a civil trial may present a superficial appeal in a given case, unitary liability and damages proceedings are in most cases both more fair and more efficient. Judicial experience has therefore established a preference for unitary proceedings. As we stated

in Syllabus Point 4 of *Sheetz, Inc. v. Bowles, Rice, McDavid, Graff & Love, PLLC,* 209 W.Va. 318, 547 S.E.2d 256 (2001):

> West Virginia jurisprudence favors the consideration, in a unitary trial, of all claims regarding liability and damages arising out of the same transaction, occurrence or nucleus of operative facts, and the joinder in such trial of all parties who may be responsible for the relief that is sought in the litigation.

Because of the unprecedented novelty and difficulty of the issues presented by litigation against the tobacco industry, the trial court and the parties chose not to hold a unitary proceeding. The parties have not challenged the trial court's decision on this point.

A jury trial on these seven issues began on September 10, 2001, and concluded on November 14, 2001. At the close of the trial, the trial court granted the appellants' motion for judgment as a matter of law on the first two issues, ruling that the appellants (1) had been significantly exposed (2) to a proven hazardous substance. The jury deliberated on the remaining five issues, and found for the appellants on issues (4) and (6), concluding that the appellants had an increased risk of contracting lung cancer and/or COPD as a result of their exposure to cigarette smoke, and that medical monitoring procedures for the early detection of those diseases existed.

However, the jury found against the appellants on issues (3) and (5). The jury found that the appellees had not engaged in any tortious conduct, and found that the appellants had not established a necessity for medical monitoring. *Bower* requires that all six elements must be proven before recovery is available to any plaintiff. To say that one "needs *no evidence* to prove a medical monitoring cause of action" is a clear misstatement of the law.

The jury also found against the appellants on issue (7), finding no willful and wanton misconduct by the appellees.

The trial court entered judgment on the jury's verdict, and in an order dated March 18, 2002, denied the appellants' motion for a new trial. The appellants now appeal the trial court's order.

## II.

In *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995), this Court addressed the standard of review of a trial court's ruling on a motion for new trial. *Tennant* stated:

> We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Tennant*, 194 W.Va. at 104, 459 S.E.2d at 381. "Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syllabus Point 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).

Typically, when a case has been determined by a jury, the questions of fact resolved by the jury will be accorded great deference. "An appellate court will not set aside the verdict of a jury, founded on conflicting testimony and approved by the trial court, unless the verdict is against the plain preponderance of the evidence." Syllabus Point 2, *Stephens v. Bartlett*, 118 W.Va. 421, 191 S.E. 550 (1937). *In accord*, Syllabus Point 1, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963). *See also* Syllabus Point 4, *Stenger v. Hope Natural Gas Co.*, 141 W.Va. 347, 90 S.E.2d 261 (1955) ("On appellate review of a case wherein a jury verdict has been rendered, it is the duty of the reviewing court to treat the evidence as being favorable to the verdict '... and give it the strongest probative force of which it will admit. So long as there is nothing so inherently or otherwise manifestly improbable in the character of the evidence as to justify the court in ignoring it, ...'. *Roberts v. Toney*, 100 W.Va. 688, 693 [, 131 S.E. 552, 553 (1926) ]."). Accordingly, "[i]n determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true." Syllabus Point 3, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736.

With these standards in mind, we proceed to consider the parties' arguments on appeal.

## III.

We begin our analysis by noting that the appellant is challenging a jury's verdict in favor of the appellees on three of seven issues. The jury concluded that the appellees did not engage in tortious conduct by

designing, manufacturing and/or distributing a defective product; concluded that the appellees did not engage in willful or wanton misconduct; and concluded that the appellants had failed to establish that it was reasonably necessary to undergo periodic medical examinations as a result of their exposure to the appellees' products. Our analysis of the extensive trial record and elaborate briefs of the parties suggests that the appellant raises serious challenges that call into question the jury's findings on the first two issues; on the third issue, however, we believe that the jury's finding is supported by the evidence.

The appellants' arguments may be summarized in the following fashion. The appellants assert that the trial court made numerous evidentiary errors. The appellants contend that the trial court erred in excluding certain evidence concerning the poisonous nature of cigarettes, and the propensity for cigarettes to unwittingly addict cigarette smokers at an early age, evidence that would allegedly have supported a finding that cigarettes are defective, and that the appellees' conduct was of a willful and wanton nature. The appellants also challenge the appellees' repeated acts in slipping before the jury evidence that the trial court had previously ruled would be inadmissible.

The appellants further contend that the trial court erred in its instructions to the jury on the issue of the appellees' tortious conduct. The appellants proffered several instructions regarding product liability law, instructions that the trial court refused to give.

■ Absent, however, from the appellants' arguments is a serious challenge to the jury's conclusion, which was specifically delineated on the verdict form, that the appellants' exposure to smoke from the appellees' cigarettes does not "make it reasonably necessary for all class members to undergo periodic medical examinations different from what would be prescribed in the absence of exposure." We stated, in *Bower v. Westinghouse Electric Corp., supra,* that in order for a plaintiff to establish a cause of action for medical monitoring, the diagnostic testing sought by the plaintiff "must be 'reasonably necessary' in the sense that it must be some-

thing that a qualified physician would prescribe based upon the demonstrated exposure to a particular toxic agent." 206 W.Va. at 142, 522 S.E.2d at 433.

The evidence presented by each party on this issue was substantial but controverted by the opposing party. At trial, the appellants' experts proposed that each class member should receive a CT scan at age 50 and each year thereafter to detect the presence of lung cancer, because such a scan can reveal fine details in the lung tissue and reveal the existence of lung cancer earlier than tests such as a simple x-ray. The appellees' experts countered that it is "certainly a national standard" if not a "world standard" to rely on tests other than a CT scan to diagnose lung cancer, and that CT scans have no advantage over a simple x-ray in making a lung cancer diagnosis.

The appellants' experts also proposed that the breathing capacity of class members should be tested using spirometry at age forty, at age forty-five, and then biannually thereafter to detect the presence of COPD. The appellants' experts suggested that these tests would allow for the early detection of defects in the lungs that can result from smoking. The appellees' experts, however, suggested that no federal or state agency, no national or international health organization, and no authoritative group of physicians had ever recommended such a monitoring regimen for past or current smokers, and that there was simply no scientific basis for the appellants' experts' position.

■ The appellants challenge the trial court's instruction on the necessity of testing, arguing that the jury should have been instructed that "factors such as financial cost and the frequency of testing should not be given significant weight." *See Bower,* 206 W.Va. at 142, 522 S.E.2d at 433 ("[F]actors such as financial cost and the frequency of testing need not necessarily be given significant weight."). The appellants assert that this instruction accurately stated the controlling law, and should have been given because it was crucial to a determination of the appellants' claim. The appellees, however, assert that even if the appellants' requested instruc-

tion was a correct statement of the law, the trial court's refusal to give it amounts to harmless error because the financial cost of testing was not an issue at trial. The appellees point out that the appellants successfully moved that the trial court bar all evidence and argument about the financial cost of testing, and reserve them for a later phase of the trial.

■ Our law on this issue is clear. "As a general rule, the refusal to give a requested instruction is reviewed for an abuse of discretion." Syllabus Point 1, in part, *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996). A trial court's refusal to give a proffered jury instruction is not reversible error if the instruction did not "concern[ ] an important point in the trial." Syllabus Point 11, in part, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994). Neither the appellants nor the appellees introduced evidence on the cost of testing or the burdensomeness of the frequency of testing, and instead focused evidence on scientific and medical criteria regarding the necessity, or lack thereof, of testing. On this record, while the appellants' proffered instruction correctly states the law, we cannot say that the trial court abused its discretion in refusing the instruction.

After a careful review of the record, it is apparent that the jury's verdict on the issue of whether medical monitoring for the appellants was reasonably necessary was founded upon conflicting testimony. As seen by this jury verdict, *Bower* establishes an extremely high bar for a plaintiff to overcome before there can be any recovery for medical monitoring. We are generally reluctant to disturb the verdicts of juries, and we decline to do so on the evidence of this case.[3]

### IV.

The circuit court's March 18, 2002 order is affirmed.

Affirmed.

Justice DAVIS, deeming herself disqualified, did not participate in the decision of this case.

Chief Justice MAYNARD dissents and reserves the right to file a dissenting opinion.

MAYNARD, Chief Justice, dissenting.

It is a well-known fact that I did not agree with this Court's recognition of a cause of action for medical monitoring or I at least opposed allowing recoveries to be spent on anything but medical testing. For that reason, I dissented in *Bower v. Westinghouse Electric Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999). However, I respect decisions of this Court and acknowledge that *Bower* is well-settled law in West Virginia, thus, we are now all compelled to follow it as precedent. However, since it is the law, *Bower* should be applied fairly. Accordingly, I respectfully dissent in this case because I believe that the appellants clearly did not receive a fair trial of their medical monitoring claims.

One of my primary concerns is that the trial court excluded the appellants' evidence of differences between machine-measured and actual tar and nicotine deliveries, especially after the defendant tobacco companies went so far as to intimate that "FTC tar" and "FTC nicotine" figures represent amounts an individual would "get" when smoking a cigarette. The trial court even observed that the tobacco companies' questioning fell within the area of inadmissible evidence and "opened the door somewhat." Nevertheless, the trial court declined to permit the appel-

---

**3.** Critics of medical monitoring obviously do not understand the rationale for such a cause of action. A simple example to demonstrate justification for recovery of such damages would be a situation in which a single industrial polluter admittedly dumped a toxic substance into a stream that ran through a neighborhood of six homes. The families in three of the homes contracted cancer that was traced directly to the toxic substance, but no one in the other three families contracted any disease. However, medical doctors for the three families who were currently free of disease advised those families that they should undergo annual medical examinations to monitor for disease from the toxic substance for the remainder of their lives. Costs for the medical monitoring would be, according to the doctors, estimated to be $500.00 to $1,000.00 per year. Common sense should suggest that these medical monitoring costs be borne by the negligent industrial polluter of the toxic substance, and not the innocent victim of the toxic exposure.

lants to develop the issue further. This is very troubling. It simply is not fair to allow one side to put on evidence of an issue in front of the jury and refuse to allow the other side to present evidence on the exact same issue.

Here, the tobacco companies were allowed to put on evidence before the jury about how hard they had worked to develop a safer cigarette, when they actually were developing a cigarette to fool a machine which measures tar and nicotine levels. Nevertheless, when the appellants attempted to present very reliable, contrary evidence on that same issue, including documents which are phenomenally incriminating, the circuit court refused to permit it.

While the majority opinion acknowledges the evidentiary issues raised by the appellants, it blithely concludes that "[a]bsent ... from the appellants' arguments is a serious challenge to the jury's conclusion ... that the appellants' exposure to smoke from the appellees' cigarettes does not 'make it reasonably necessary for all class members to undergo periodic medical examinations different from what would be prescribed in the absence of exposure.'" The majority opinion concluded that the excluded evidence, if admitted at trial, may have changed the jury's mind on the issues of whether the appellees engaged in tortious conduct or willful or wanton misconduct, but had no bearing on the issue of whether the appellants showed the reasonable necessity of all class members undergoing periodic medical examinations. I disagree.

I believe that the evidentiary issues, all but overlooked in the majority opinion, call into question the jury's findings not only on the issues of tortious and willful and wanton conduct, but also on whether the appellants established that it was reasonably necessary to undergo medical monitoring. To repeat, the jury was permitted to hear how diligently the tobacco companies worked to design a safer cigarette, but it was not permitted to hear how these companies intentionally and purposefully designed their cigarettes to cheat the FTC machine by providing low machine yields and significantly higher actual yields of tar and nicotine. This excluded evidence could have affected the jury's determination of the reasonable necessity of medical monitoring in at least two ways. First, the jury may have concluded that no monitoring was necessary for the appellants because the tobacco companies did nothing wrong. Second, if the jury had heard evidence that the cigarettes were not as safe as claimed and that they really had much higher yields of tar and nicotine, the jury may have concluded that medical monitoring was reasonably necessary due to the increased risk of harm.

In sum, I cannot subscribe to the majority opinion's reasoning that the improper exclusion of highly probative and relevant evidence affected some issues before the jury but not others. The tobacco companies deliberately and purposefully underestimated just how poisonous their cigarettes were. Their deceit is astonishing and chilling, and the jury had a right to know of such misconduct. Now, the majority opinion mistakenly underestimates just how much the entire trial was poisoned by the improper and unfair exclusion of important evidence. There are several other errors that could be extensively developed in this dissent, but the majority has spoken, and there is simply nothing further that can be done to rectify this injustice. So, I will merely mention the other errors in outline form without further discussion. Any single one of the errors listed below would alone warrant a retrial, but cumulatively they are extremely compelling.

The majority misapprehended how cumulative error, which the majority acknowledged in its opinion, prejudiced the entire trial in:

(1) the exclusion of evidence concerning youth smoking;

(2) the exclusion of evidence of the poisonous nature of the cigarettes;

(3) the exclusion of evidence of design manipulation;

(4) the failure of the trial court to instruct on product liability law; and

(5) the failure to stop the defendant tobacco companies from repeatedly "slipping" evidence before the jury which the trial court had ruled inadmissible.

·Because of the evidentiary and other errors enumerated hereinabove, I believe the appellants' trial was not fair. I would reverse and remand for a new trial. Accordingly, I respectfully dissent.