655 S.E.2d 161

STATE of West Virginia ex rel. CHEM-TALL INCORPORATED, Ciba Specialty Chemicals Corporation, Cytec Industries, Inc., G.E. Betz, Inc., Hychem, Inc., Ondeo Nalco Company, Stockhausen, Inc., Zinkan Enterprises, Inc., John Doe Manufacturing and/or Distributing Company, John Ceslovnik, Robert McKinley, Eulis Daniels, John Doe Company Representatives for Chemtall Incorporated, Ciba Specialty Chemicals Corporation, Cytec Industries, Inc., G.E. Betz, Inc., Hychem, Inc., Ondeo Nalco Company, Stockhausen, Inc., Zinkan Enterprises, Inc., Petitioners,

v.

Honorable John T. MADDEN, Judge of the Circuit Court of Marshall County; and All Plaintiffs in Stern, et al. v. Chemtall, Inc., et al., Marshall County Civil Action No. 03–C–49M, Respondents.

No. 33380.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 12, 2007.

Decided Nov. 15, 2007.

See also, *State ex rel. Chemtall, Inc. v. Madden*, 216 W.Va. 443, 607 S.E.2d 772.

C. James Zeszutek, Esq., Dinsmore & Shohl, Pittsburgh, PA and Denise D. Klug, Esq., Dinsmore & Shohl, Wheeling, WV, for Nalco Company.

Landers P. Bonenberger, Esq., Jeffrey A. Holmstrand, Esq., McDermott & Bonenberger, Wheeling, WV, for Chemtall, Inc.

Harry G. Shaffer, III, Esq., Shaffer & Shaffer, Madison, WV, for CIBA Specialty Chemicals Corp.

Heather Heiskell Jones, Esq., Andrew P. Arbogast, Esq., Spilman Thomas & Battle, Charleston, WV, for Cytec Industries, Inc.

David K. Hendrickson, Esq., Hendrickson & Long, Charleston, WV, for G.E. Betz, Inc.

Joseph W. Selep, Esq., Zimmer Kunz, Pittsburgh, PA, for Hychem, Inc.

Charles M. Love, III, Esq., Phyllis M. Porterfield, Esq., Bowles Rice McDavid Graff & Love, Charleston, WV, for Stockhausen, Inc.

Robert P. Martin, Esq., Justin C. Taylor, Esq., Bailey & Wyant, Charleston, WV, for Zinkan Enterprises, Inc.

R. Dean Hartley, Esq., William E. Parsons, II, J. Zachary Zatezalo, Hartley & O'Brien, Wheeling, WV, and E. William Harvit, Esq., Harvit & Schwartz, Charleston, WV, and Bradley R. Oldaker, Esq., Baily, Stultz, Oldaker & Green, PLLC, Weston, WV, for Plaintiffs.

Thomas F. Basile, Esq., The Calwell Practice, Charleston, WV, and Scott S. Segal,

Esq., Mark R. Staun, Esq., The Segal Law Firm, Charleston, WV, and Theodore Goldberg, Esq., David B. Rodes, Esq., Goldberg, Persky & White, for the Intervenors.

Brenda N. Harper, Esq., for Amicus Curiae The West Virginia Chamber of Commerce.

Kenneth S. Geller, Esq., Andrew L. Frey, Esq., Scott A. Chesin, Esq., Mayer, Brown, Rowe & Maw LLP, and S. Jane Anderson, Esq., Dickie, McCamey & Chilcote LC, and Hugh F. Young, Esq., The Product Liability Advisory Council, Inc., for Amicus Curiae The Product Liability Advisory Council, Inc.

Mark A. Behrens, Esq., Cary Silverman, Esq., Shook, Hardy & Bacon, LLP, Pro Hac Vice, and Jay M. Potter, Esq., Francis, Nelson & Brison, for Amici Curiae The West Virginia Roundtable, West Virginia Manufacturers Association, Chamber of Commerce of the United States of America, National Association of Manufacturers, American Chemistry Council.

The Opinion of the Court was delivered PER CURIAM.

The petitioners and defendants below, suppliers and/or manufacturers of a chemical known as polyacrylamide, seek extraordinary relief to prevent the enforcement of two orders of the Circuit Court of Marshall County in an action brought by the respondents and plaintiffs below, current and former coal preparation plant workers, in which they seek medical monitoring for diseases they allegedly may develop in the future due to their exposure to polyacrylamide. For the reasons that follow, we deny the requested relief.[1]

## I.

## FACTS

The respondents and plaintiffs below are coal preparation plant workers who allegedly have been exposed to polyacrylamide which is an industrial water cleaner. The petitioners and defendants below are several corporations who manufactured, distributed, and/or sold polyacrylamide to coal preparation plants.[2] In their complaint, the respondents allege a cause of action for strict liability and seek medical monitoring and punitive damages.[3]

On January 9, 2007, the Circuit Court of Marshall County ordered that Franklin Stump, Danny Gunnoe, and Teddy Joe Hoosier be allowed to intervene in the underlying action. We will hereafter refer to this order as the "Intervention Order." Also, by order dated January 9, 2007, the circuit court adopted a trial plan in which the issues of liability and punitive damages will be bifurcated from medical monitoring and class certification. Specifically, the circuit court ordered that

> [t]he first phase of the trial will involve liability and whether the Defendants' actions and/or inactions justify punitive damages, and if so, what multiple of general damages will be assessed as a punitive

---

1. We wish to acknowledge the contribution of *amici curiae* in support of the petitioners including The West Virginia Chamber of Commerce, The Product Liability Advisory Council, Inc., The West Virginia Roundtable, West Virginia Manufacturers Association, Chamber of Commerce of the United States of America, National Association of Manufacturers, and American Chemistry Council.

2. The respondents originally were granted class certification in a seven-state class action including plaintiffs in West Virginia, Illinois, Indiana, Ohio, Pennsylvania, Tennessee and Virginia. In *State ex rel. Chemtall, Inc. v. Madden*, 216 W.Va. 443, 607 S.E.2d 772 (2004), this Court vacated the seven-state class action. However, we authorized the circuit court to proceed to consider certification of appropriate classes and subclass-

es, and we further declined to order that the action proceed only as to the West Virginia plaintiffs. Thereafter, the plaintiffs withdrew all claims arising out of exposure in all of the states except West Virginia and Pennsylvania.

   Subsequently, in *Stern v. Chemtall, Inc.*, 217 W.Va. 329, 617 S.E.2d 876 (2005), this Court reversed the circuit court's denial of a motion to intervene in the underlying action and remanded the matter to the circuit court for entry of an order consistent with our opinion. We discuss our holding in *Stern* in greater detail in the body of this opinion.

3. According to the respondents, although polyacrylamide is nontoxic, it contains acrylamide monomer, a toxin which has been linked to neurologic and reproductive injuries and diseases including certain types of cancer.

damage multiplier as to each Defendant Should Plaintiffs prevail on the issue of liability, the parties will proceed in the second phase to try the issues of medical causation, medical monitoring viability, and damages.

Finally, even though the circuit court did not certify a class consisting of Pennsylvania and West Virginia plaintiffs, it concluded, after a lengthy analysis, that the relevant laws of West Virginia and Pennsylvania are sufficiently compatible so that the claims of plaintiffs from both states can fairly be adjudicated in West Virginia. We will hereafter refer to this order as the "Trial Plan Order."

The petitioners subsequently filed the instant petition for a writ of prohibition and/or mandamus with this Court in which they ask us to vacate the Intervention Order to the extent that it permits Teddy Joe Hoosier to intervene in the underlying action. The petitioners further request that this Court vacate the Trial Plan Order as it pertains to the availability and recovery of punitive damages and the compatibility of West Virginia and Pennsylvania law. On April 19, 2007, this Court granted a rule to show cause why the requested relief should not be granted. We now deny the relief sought.

## II.

### STANDARD OF REVIEW

■ The petition herein is styled as one of "Prohibition and/or Mandamus." Because the petitioners seek to correct a pre-trial order, we will consider the relief sought to be a writ of prohibition. In *State ex rel. Crafton v. Burnside*, 207 W.Va. 74, 78, 528 S.E.2d 768, 772 (2000), we indicated that "[t]his Court is empowered to exercise its original jurisdiction to review the legal propriety of a circuit court's pre-trial orders. This Court has specifically utilized the remedy of prohibition to correct a court's pre-trial order so that a unitary trial could occur." (Citation omitted.).

■■ Concerning the standard for granting a writ, we have held:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). With these principles to guide us, we proceed to address the issues raised by the petitioners.

## III

### DISCUSSION

#### *1. Intervention Order*

■ In its January 9, 2007, Intervention Order, the circuit court, relying on this Court's decision in *Stern v. Chemtall, Inc.*, 217 W.Va. 329, 617 S.E.2d 876 (2005), granted intervenor status to Franklin Stump, Danny Gunnoe, and Teddy Joe Hoosier in the underlying action. The petitioners challenge this order to the extent that it permits the intervention of Teddy Joe Hoosier.

In *Stern*, Appellants Stump, Gunnoe, and Hoosier, along with others, appealed the Circuit Court of Marshall County's January 15, 2004, order that denied their motion to intervene in the underlying action. Two of the appellants, Stump and Gunnoe, were coal preparation workers and plaintiffs in a civil action pending at that time in the Circuit

Court of Boone County, styled *Denver and Debra Pettry, et al. v. Peabody Holding Co., et al.*, Case No. 02–C–58, wherein they sought medical monitoring relief against some of the same defendants involved in the action in the Circuit Court of Marshall County. This Court, in Stern, referred to the litigation in the Circuit Court of Boone County as "the *Pettry* litigation" and the action in the Circuit Court of Marshall County as "the Stern litigation." Hoosier was not a party to the *Pettry* litigation or any litigation at that time. Rather, he sought to intervene on behalf of water treatment workers with similar medical monitoring claims as coal preparation plant workers based on exposure to the same chemical at issue in the Marshall County action. In *Stern*, this Court reversed the denial of the motion to intervene and remanded the matter to the Circuit Court of Marshall County for entry of an order consistent with our opinion. We further ordered that the *Pettry* litigation be transferred from the Circuit Court of Boone County to the Circuit Court of Marshall County.

The petitioners now claim that the circuit court erred on remand by permitting Hoosier, the water treatment worker, to intervene in the underlying action. The petitioners assert that *Stern*, by its clear language, mandates only that "the *Pettry* litigants," *i.e.*, Stump and Gunnoe, be permitted to intervene. In addition, the petitioners aver that the circuit court exceeded its jurisdiction in permitting the intervention of water treatment workers in an action originally brought by coal preparation plant workers. According to the petitioners, the inclusion of water treatment workers will require separate evidence and analyses, extensive new discovery, and the retention of new experts.

■ We reject the petitioners' arguments. A careful reading of *Stern* indicates this Court's intent to permit Hoosier to intervene in the underlying action. Although it is true that we repeatedly referred to the intervenors in *Stern* as "the *Pettry* litigants," we did not thereby exclude Hoosier as an intervenor. To the contrary, Hoosier is clearly

identified as one of the appellants who challenged the circuit court's order denying the motion to intervene. Moreover, this Court reversed the circuit court's order absent any indication whatsoever that our reversal did not apply to Hoosier. In addition, we believe that there are facts common to both water treatment and coal preparation plant workers, such as exposure to the same chemical and the question of risk of contracting the same diseases, which make intervention proper.[4] Finally, we note that the circuit court has not yet indicated how it intends to manage any differences with regard to these two groups of plaintiffs. Thus, a ruling by this Court at the present time would be premature. Accordingly, for these reasons, we deny the writ sought by the petitioners to vacate the circuit court's January 9, 2007, Intervention Order as it pertains to the intervention of Teddy Joe Hoosier.

### 2. Trial Plan Order

#### A. Availability of Punitive Damages

■ Next, the petitioners challenge the circuit court's ruling regarding both the availability of punitive damages in cases in which only medical monitoring relief is sought and the procedure governing the determination of punitive damages. First, the petitioners assert that the procedure governing the determination of punitive damages is unconstitutional under the United States Supreme Court's recent decision in *Philip Morris USA v. Williams*, —— U.S. ——, 127 S.Ct. 1057, 166 L.Ed.2d 940 (2007).

The issue in *Philip Morris* was whether the Federal Constitution's Due Process Clause permits a jury to base a punitive damages award in part upon its desire to punish the defendant for harming persons who are not before the court. The Supreme Court concluded that such an award would amount to the taking of property from the defendant without due process. The principle announced by the Court in *Philip Morris* is that "the Constitution's Due Process Clause forbids a State to use a punitive

---

4. According to West Virginia Rule of Civil Procedure 24(b), concerning permissive intervention, "[u]pon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common."

damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, *i.e.*, injury that it inflicts upon those who are, essentially, strangers to the litigation." *Philip Morris*, — U.S. —, —, 127 S.Ct. 1057, 1063, 166 L.Ed.2d 940. A basis for this rule is that "the Due Process Clause prohibits a State from punishing an individual without first providing that individual with an opportunity to present every available defense." *Id.* (Internal quotation marks and citation omitted.). In other words,

... a defendant threatened with punishment for injuring a nonparty victim has no opportunity to defend against the charge, by showing, for example in a case such as this, that the other victim was not entitled to damages because he or she knew that smoking was dangerous or did not rely upon the defendant's statements to the contrary.

*Id.* According to the petitioners, the circuit court's procedure for awarding punitive damages violates the petitioners' due process rights as set forth in *Philip Morris* because it requires a jury to determine punitive damages without taking into account a plaintiff's individualized harm and prior to a finding of actual liability against any defendant.

We find no merit to the petitioners' contention. Plainly, the circuit court's trial plan, on its face, is not a clear error of law because it does not guarantee a result at odds with *Philip Morris*. Significantly, there has not yet been a trial in this case. No evidence has been adduced, none of the petitioners have been found liable for any tortious conduct, and punitive damages have not been assessed. Therefore, a decision on the constitutionality of punitive damages at this point would amount to nothing more than an exercise in speculation. Therefore, we believe the question of the constitutionality of punitive damages is best decided in light of a

verdict based on a full development of the evidence at trial.

■ For this same reason, we also decline, at this early pre-trial stage, to address the petitioners' claim that punitive damages are not available in cases in which only medical monitoring damages are sought. Again, we are convinced that appellate review of this issue is better left to the review of a verdict after complete development of all the facts and testimony and after a trial of all the issues.[5] Accordingly, we deny the petitioners' request to vacate the circuit court's January 9, 2007, Trial Plan Order as it pertains to punitive damages.

### B. Compatibility of West Virginia and Pennsylvania Law

■ Finally, the petitioners assert that the circuit court erred in formulating a trial plan that fails to address the material differences in West Virginia and Pennsylvania law. We disagree. Generally, trial courts have broad discretion in matters of trial management and procedure. *See* Syllabus Point 2, *B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W.Va. 463, 475 S.E.2d 555 (1996) ("Trial Courts have the inherent power to manage their judicial affairs that arise during proceedings in their courts, which includes the right to manage their trial docket."). We believe that the circuit court below is fully capable of formulating procedures that effectively address any differences in West Virginia and Pennsylvania law.[6] Therefore, we deny the petitioners' request to vacate the circuit court's ruling that plaintiffs in both West Virginia and Pennsylvania can adjudicate their claims in a West Virginia court.

Prior to concluding, we feel compelled to emphasize and strongly note that the underlying action was originally filed in March 2003, and has not yet gone to trial. Further,

---

**5.** At least one court has recognized that "it is not uncommon for plaintiffs to join claims for punitive damages with claims for medical monitoring." *Carlough v. Amchem Products, Inc.*, 834 F.Supp. 1437, 1460(E.D.Pa.1993), *citing Day v. NLO, Inc.*, 814 F.Supp. 646 (S.D.Ohio 1993); *Cook v. Rockwell Int'l Corp.*, 755 F.Supp. 1468 (D.Colo.1991); *Catasauqua Area School Dist. v. Raymark Indus., Inc.*, 662 F.Supp. 64 (E.D.Pa.

1987); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir.1988).

**6.** In its Trial Plan Order, the circuit court suggested the application of Pennsylvania laws to the claims of Pennsylvania plaintiffs and West Virginia laws to the claims of West Virginia plaintiffs.

the instant case is the third time that the parties below have sought the intervention of this Court in pre-trial matters.[7] We hope the litigants understand and appreciate the difficulty this Court faces in trying to decide so many issues pre-trial, in the limited context of extraordinary remedies, and in the absence of a meaningful, fully-developed factual record. Accordingly, we trust the lawyers and parties will now focus vigorously on letting these cases be tried by a trial court. Having disposed of the issues raised herein, we are confident that the parties can now proceed to trial without further delay and without the necessity of additional guidance from this Court Finally, we reiterate our statement in *Stern* that "we believe that the circuit court is in a better position [than this Court] to manage this litigation and to protect the interests of [the parties]. The circuit judge should manage the cases and the issues herein as he deems appropriate." *Stern*, 217 W.Va. at 338, 617 S.E.2d at 885.

## IV.

### CONCLUSION

Having found no clear error as a matter of law in the circuit court's Intervention Order and Trial Plan Order, we deny the writ of prohibition sought by the petitioners.

Writ Denied.

Chief Justice DAVIS, deeming herself disqualified, did not participate in the decision in this case.

Judge PRATT, sitting by special assignment.

Justice BENJAMIN concurs in part, dissents in part, and reserves the right to file a separate opinion.

BENJAMIN, Justice, concurring and dissenting:

For the reasons discussed below, I concur with the majority as to its holding regarding the circuit court's January 9, 2007, Intervention Order, and dissent as to its holding pertaining to the circuit court's January 9, 2007, Trial Plan Order.

The majority reached the correct decision in denying the writ sought by petitioners to vacate the circuit court's January 9, 2007, Intervention Order as it pertains to Teddy Joe Hoosier. While I am not entirely convinced, as is the majority, that the facts and legal issues will indeed prove to be common to both water treatment and coal preparation plant workers, the fact remains that the circuit court has not yet indicated how it intends to manage any differences with regard to these two groups of plaintiffs, and, to date, no discovery regarding water treatment workers has been conducted. Before this Court's intervention becomes necessary, further factual development on this issue is needed to affirmatively ascertain whether the petitioners will be prejudiced in a way that is not correctable on appeal. Accordingly, because it is premature at this juncture to grant a writ regarding this issue, I concur with the majority's decision to deny relief at the present time.

I respectfully dissent from the majority's opinion as to petitioner's challenge of the circuit court's Trial Plan Order and its rulings regarding the availability of punitive damages in medical monitoring cases, the procedure governing the determination of punitive damages, and the compatibility of West Virginia and Pennsylvania law. The petitioners present important issues of law that are matters of first impression before this Court and the Trial Plan Order facially serves to prejudice the petitioners in a way that is not correctable on appeal. Delaying a consideration of the matters raised herein until an eventual appeal poses a distinct potential for prejudice to the due process rights of the petitioners.[1] Thus, I believe it is incumbent upon this Court to now entertain

---

7. *See* n. 2, *supra.*

1. Our inaction constrains the effective choices realistically available to the petitioners to such a degree as to implicate grave due process considerations. By failing to confront the issues raised herein, we are acquiescing to a system whereby case management machinations and procedural chicanery rather than substantive law and facts appear to determine the outcome of the litigation. The right to defend yields to the need to settle.

and issue the writ of prohibition regarding these matters.

### 1) The Circuit Court Committed Clear Error Because The Trial Plan Order, As It Pertains to Punitive Damages, Violates the Due Process Clause.

The Trial Plan Order, as it pertains to punitive damages, denies the defendants' due process rights for three pivotal reasons. First, because a class has not yet been certified, it is unconstitutional to require a procedure for determination of punitive damages and a punitive damages multiplier in a phase one trial that does not take into account only the harm to individual plaintiffs and does not determine liability as to any defendant. Second, I seriously question the constitutionality of permitting a punitive damages claim to proceed in a medical-monitoring case, where the plaintiffs merely seek equitable, not compensable, relief. Finally, the appropriateness of punitive damages cannot, and should not, be determined prior to a finding of underlying liability.

### A) Due process requires that a jury determine that punitive damages are based on a plaintiff's individualized harm.

Punitive damages are a deprivation of property requiring safeguards to ensure that any such award is not arbitrary and fully comports with due process. *Philip Morris v. Williams*, — U.S. —, 127 S.Ct. 1057, 1061, 166 L.Ed.2d 940 (2007). This requirement applies both to the procedures applicable to the jury's decision to award punitive damages and the calculation of the amount. 127 S.Ct. at 1061. By mandating that punitive damages be addressed in the first trial phase, before a class has been certified, the circuit court's Trial Plan Order fails to ensure that any punitive damages award is reasonably related to any actual harm suffered by any plaintiff. The petitioners are essentially left with no way to address individualized claims of particular plaintiffs, and demonstrate how their particularized exposures, if any, caused no increased risk of contracting a particular disease. Unquestionably, this procedure does not comport

with the holdings of the Supreme Court in *Williams*.

In *Williams*, the Supreme Court found that the trial court violated defendant's due process rights when it failed to ensure that the jury did not base its punitive damages award "in part upon its desire to punish the defendant for harming persons who are not before the court." *Id.* at 1060. The Court ruled that a punitive damages award must rely upon the defendant's conduct toward the plaintiff. *Id.* at 1063. Otherwise, a defendant has no adequate notice of the magnitude of the penalty that might be assessed against it; no ability to raise its defenses against the claim of persons not before the court; and no opportunity to contest liability as to such individuals. *Id.* Therein, the Supreme Court also stated:

[T]o permit punishment for injuring a non-party victim would add a near standardless dimension to the punitive damages equation. How many such victims are there? How seriously were they injured? Under what circumstances did injury occur? The trial will not likely answer such questions as to nonparty victims. The jury will be left to speculate. And the fundamental due process concerns to which our punitive damages cases refer—risks of arbitrariness, uncertainty and lack of notice—will be magnified ...

[W]e can find no authority supporting the use of punitive damages awards for the purpose of punishing a defendant for harming others. We have said that it may be appropriate to consider the reasonableness of a punitive damages award in light of the potential harm the defendant's conduct could have caused. But we have made clear that the potential harm at issue was harm potentially caused the plaintiff.

*Id.* (internal citations omitted).

The Supreme Court warned that procedural safeguards must be employed to ensure that juries do not impose awards that run afoul of the Due Process Clause:

[G]iven the risks of arbitrariness, the concern for adequate notice, and the risk that punitive damages awards can, in practice, impose one State's (or one jury's) policies ... upon other States-all of which accom-

pany awards that, today, may be many times the size of such awards in the 18th and 19th centuries . . .—it is particularly important that States avoid procedure that unnecessarily deprives juries of proper legal guidance.

*Id.* at 1064 (internal citation omitted).

None of our prior decisions concerning mass tort trial plans have contemplated the scenario where punitive damages are permitted to be assessed before a class has been certified in an action seeking only medical-monitoring damages. For example, in *In re West Virginia Rezulin Litigation,* 214 W.Va. 52, 585 S.E.2d 52 (2003), an action seeking both a monetary award for medical monitoring costs and compensatory damages, this Court discussed only the appropriateness of class treatment, and did not touch at all upon the issue of whether or how punitive damages would be available. Additionally, the medical monitoring cases in *In re Tobacco Litigation,* 215 W.Va. 476, 600 S.E.2d 188 (2004), involved a decision stemming from a defense verdict at trial, where personal injury claims were asserted by individuals who were required to prove specific causation, actual damages, and entitlement to punitive damages. A punitive damages award was not at issue in that case either. Thus, as I see it, there are no prior decisions of this Court that directly govern, in their entirety, the issues of first impression presented by this action.

The Trial Plan Order at issue here does not contain the necessary procedural safeguards to ensure that due process is afforded. By trying punitive damages during the first phase of trial, the petitioners are prevented from presenting every available defense, and from confronting and cross-examining adverse witnesses. As the petitioners correctly point out, the universe of plaintiffs will not even be defined until after a trial on the merits, and thus, the petitioners will have no assurance as to whether additional individuals will be bound by the judgment; who those individuals might be through class descriptions; and how the time frames might be defined for those plaintiffs. Indeed, the applicable time frame is directly relevant to the issue of what conduct of any given defen-

dant a jury is permitted to consider in connection with a punitive damages award. Behavior that a jury could conceivably find culpable that occurred in 1969 versus 1999, will not apply to all defendants, or to all named plaintiffs, or to all potential future class-members. Accordingly, I believe it is constitutionally inappropriate to delay class certification proceedings when the plaintiffs seek to obtain a punitive damages judgment on a class-wide basis.

**B) The circuit court's order is unconstitutional because it requires a determination of punitive damages prior to any finding of actual liability against any defendant.**

In its order, the circuit court bifurcated "liability and punitive damages" from "medical monitoring and class certification." Phase One therefore excludes key components of liability, such as actual causation and all factors of *Bower v. Westinghouse Electric Corp.,* 206 W.Va. 133, 139, 522 S.E.2d 424 (1999), necessary to determine the appropriateness of medical monitoring, and mandates a determination of punitive damages ahead of any liability finding. I believe this procedure is constitutionally flawed, particularly in light of the United States Supreme Court's recent decision in *Williams.* Punitive damages must "bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred," and can be awarded only if a defendant is liable to a plaintiff. Syl. Pts. 1 and 3, in part, *Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991). As stated above, I believe that the instant litigation is an entirely different case from other medical monitoring cases previously considered by this Court. Because this case is the first class-action that seeks *only* medical-monitoring damages, and not compensatory damages, it presents issues of first impression never squarely addressed by this court. Accordingly, I am not convinced that it is appropriate, as it was in *In re Tobacco Litigation* to permit an assessment of punitive damages prior to making a finding of liability in the instant action.

*C) Punitive damages are not appropriate in an equitable medical monitoring class action.*

I also believe that the circuit court has exceeded its authority by permitting the respondents to proceed with a punitive damages claim in this matter. Our Court has defined the "injury" claimed by medical monitoring plaintiffs as a "significantly increased *risk* of contracting a particular disease." *See State ex rel. Chemtall, Inc. v. Madden,* 216 W.Va. 443, 455, 607 S.E.2d 772, 784 (2004) (emphasis added). A plaintiff is not required to show that a particular disease is certain or even likely to occur as a result of exposure. "All that must be demonstrated is that the plaintiff has a significantly increased risk of contracting a particular disease relative to what would be the case in the absence of exposure, and '[n]o particular level of quantification is necessary to satisfy this requirement.'" *Bower,* 206 W.Va. at 142, 522 S.E.2d at 433. Our Court has long recognized that a plaintiff may not recover punitive damages in the absence of actual harm and recovery of compensatory damages. *See Garnes,* 186 W.Va. at 667 & Syl. Pt. 1, 413 S.E.2d 897. Because the respondents have not asserted personal injury claims, as they have not suffered any actual, present physical injuries from their alleged exposure to petitioners' products, punitive damages simply should not be available in this case.

Furthermore, the Due Process Clause requires a jury to measure the entitlement to punitive damages by the amount of harm suffered by the respondents, and prohibits "grossly excessive or arbitrary punishments." *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 416, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). A proper measure of punitive damages begins with a determination of the proportionality between compensatory damages and punitive damages. *Id.,* 538 U.S. at 418, 123 S.Ct. 1513. Any award of punitive damages in this class action will be completely arbitrary because there are no actual compensatory damages on which to base a multiplier. This Court has never before permitted a phase one trial of partial liability plus punitive damages entitlement and multiplier to occur in an uncertified,

medical-monitoring class action in which no personal injury claims have ever been brought. To permit punitive damages in a case of this nature is to create a landslide on the existing slippery slope of our traditional injury-based tort law.

**2) The Circuit Court Committed Clear Error Because the Trial Plan Order Fails to Address Material Differences Between West Virginia and Pennsylvania Law.**

Finally, it is my opinion that the material differences between our law and Pennsylvania's law make the circuit court's trial plan simply unworkable. Rule 23(a)(3) of the West Virginia Rules of Civil Procedure requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." A representative parry's claim or defense is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. *State ex rel. Chemtall, Inc. v. Madden,* 216 W.Va. 443, 455, 607 S.E.2d 772, 784 (2004). In *Chemtall I,* this Court stated that:

> In the instant case the representative parties were all allegedly exposed to acrylamide in West Virginia which means that West Virginia law on medical monitoring should be applied to the representative plaintiffs. Respondents must therefore show, and the circuit court must find, that the West Virginia medical monitoring claims are typical of the medical monitoring claims of the proposed class members who were allegedly exposed in other states. In other words, it must be shown, among other things, *that their claims are based on the same legal theory.*

*Id.* (Emphasis in original).

This Court also provided guidance in that decision by stating that:

> In order for the representative plaintiffs who were allegedly exposed in West Virginia to show that they could represent the proposed class members allegedly exposed in the other states, they must show that the other states recognize medical moni-

toring causes of action which are *reasonably co-extensive* with the medical monitoring causes of action in West Virginia. This is due to the fact that the typicality requirement requires the representative plaintiffs to establish "the bulk of the elements of each class member's claim when they prove their own claims."

*Id.* (Emphasis added).

In West Virginia, it is well settled that product manufacturers can be held strictly liable when a product defect is proven. Thus, causation essentially need not be proven in order to establish liability. Petitioners assert that, in Pennsylvania, however, liability must be proven by demonstrating negligence on the part of the product manufacturer. *See, e.g., Redland Soccer Club, Inc. v. Department of the Army and Department of Defense of the U.S.,* 548 Pa. 178, 696 A.2d 137, 145 (1997). They assert that unlike West Virginia, Pennsylvania has not yet adopted a strict liability theory of proof. The trial plan, as postured, does not seek to litigate the issue of negligence for those Pennsylvania claims. It only assumes that strict liability would apply. Although the circuit court, by pointing to a Third Circuit decision, *Barnes v. American Tobacco Co.,* 161 F.3d 127 (3rd Cir.1998) (assuming without deciding that the Pennsylvania Supreme Court would allow an intentional tort or strict product liability claim for medical monitoring), believes that Pennsylvania would be inclined to adopt strict liability if it were presented with the issue, the fact remains that Pennsylvania's highest state court has not yet made such a ruling.

Without conducting an in depth review of Pennsylvania law on this issue, if the state of the law in Pennsylvania is what petitioners say it is, then there does in fact appear to be material differences in West Virginia and Pennsylvania law regarding issues of liability in a medical monitoring action. Accordingly, as a matter of constitutional full faith and credit and due process principles, the West Virginia and Pennsylvania claims cannot be tried under one cohesive trial plan. I believe that the circuit court commits clear error in attempting to expand Pennsylvania law to include strict liability claims for purposes of this case. At the very least, the parties

should have been given ample opportunity by the circuit court to brief these issues and present them for oral argument, prior to making its own unilateral decision.

In summary, medical monitoring claims, particularly in the class action context, present new and important challenges for both the circuit courts and litigants. In light of this, I am troubled by this Court's unwillingness to entertain the matters before us here, as they are properly ripe for adjudication. The errors below require correction now, to ensure that the parties and the circuit court avoid the time, expense, and prejudice of a constitutionally infirm trial. Accordingly, I believe this Court should take the opportunity to address these issues and I would grant the writ.

For these reasons I have set forth, I respectfully concur to and dissent from the majority's opinion.